[No. H002543. Sixth Dist. Mar. 8, 1989.]

NEC ELECTRONICS INC., Plaintiff and Respondent, v. PORTER HURT, Defendant and Appellant.

**COUNSEL**

Ed W. Hendren and Holtzmann, Wise & Shephard for Defendant and Appellant.

Vernon H. Granneman, Kevin M. Fong, Jeffrey H. Wong and Pillsbury, Madison & Sutro for Plaintiff and Respondent.

OPINION

ELIA, J.—Respondent NEC Electronics Inc. (NEC) filed a motion to amend its judgment against Ph Components (Ph) to add appellant Porter Hurt (Hurt) as a judgment debtor. The trial court granted the motion and Hurt brings this appeal. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

NEC filed suit against Ph in March 1985 to recover amounts due for goods which NEC sold to Ph. Frank Finelli, Ph's chief financial officer, was served with the NEC complaint. Neither Finelli nor Hurt, the sole shareholder and chief executive officer of Ph, was named as a party or served in his individual capacity. Ph subsequently appeared by filing a general denial.

In April 1985, Finelli met with representatives of NEC to discuss the financial problems of Ph and its need to compromise the claims of unsecured creditors. NEC acknowledged Ph's financial problems and stated that it would not take further legal action at least through May 1985.

In May 1985, Hurt, Finelli and Brad Hartman, a representative of NEC, attended a meeting of Ph's unsecured creditors. The creditors were informed that Hurt was willing to advance $1.5 million of his personal funds to provide additional working capital for Ph. Ph hoped to avoid filing a chapter 11 petition for bankruptcy but indicated that it would do so if necessary. A creditors' committee was formed and at the conclusion of the meeting the creditors' committee agreed to recommend a 30-day moratorium on the outstanding unsecured trade debt of Ph.

On July 29, 1985, the creditors' committee proposed a Joint Plan of Reorganization for Ph. This plan was communicated to Ph's creditors. Two days before trial, NEC wrote counsel for Ph that NEC was rejecting the plan and intended to prosecute its action against Ph to conclusion. In addition, counsel for NEC wrote: "At the conclusion of that action, we intend to carefully analyze our client's rights against *Ph's shareholder* and any other entities or individuals who may have liability on account of our client's claim. . . . With interest, we estimate that NEC is currently owed $160,000. An immediate cash payment by an entity other than PH, *presumably its shareholder* to our client of one-half of that total amount ($80,000) would be sufficient to settle NEC's claim. . . ." (Italics added.)

On the day before trial, Ph notified NEC that it would not appear. The trial took place on August 23, 1985, with NEC calling one witness and submitting certain additional documentary evidence. Ph was not present.

The court entered judgment against Ph and in favor of NEC for $139,366.37 together with prejudgment interest. Ph did not appeal this judgment.

On October 9, 1985, Ph filed a voluntary petition under chapter 11 of the Federal Bankruptcy Act. As part of those proceedings, NEC took the depositions of Hurt and Finelli. Approximately six months later, NEC filed a motion pursuant to Code of Civil Procedure section 187 to amend the judgment against Ph to name Hurt as an additional judgment debtor. The basis for the motion was NEC's allegation that Hurt was the alter ego of Ph.

The trial court granted the motion. It found that Hurt received in excess of $2.8 million in "loans" from Ph. These "loans" or "advances" were not documented through ordinary loan documents or reflected in the corporate minutes. No interest was paid on any of the moneys even though large sums remained outstanding for several years. Although Hurt eventually repaid a large portion of the principal sum to the corporation, a substantial dispute still exists over whether additional moneys are owed to Ph.

Ph also paid insurance, berthing fees, maintenance and fuel expenses for a boat owned by Hurt. Ph leased an automobile for Hurt's wife, who was not a Ph employee. In addition, Ph made over 30 monthly mortgage payments on Hurt's personal residence. The trial court found that Hurt used his personal funds to pay corporate obligations, including property taxes, building rent, payroll and legal expenses. Hurt claimed these payments constituted partial repayment of the loans Hurt received from Ph but, as noted above, the advances and repayments were not adequately accounted for by Hurt. Finally, Hurt paid $375,000 of his personal assets to fund the reorganization of the Ph chapter 11 bankruptcy case. These facts led the trial court to conclude that Hurt was the alter ego of Ph.

The trial court also concluded that Hurt had an opportunity to present a defense in the proceedings between NEC and Ph. The court stressed that Hurt was the chief executive officer of Ph as well as its sole shareholder and that Hurt had knowledge of the lawsuit while it was pending. Although Hurt delegated responsibility to Finelli to retain counsel to oppose the lawsuit, Hurt knew of the amounts owed to NEC and was continuously involved in efforts to satisfy that indebtedness. The court concluded that (1) Porter Hurt was the alter ego of Ph; (2) Hurt controlled the litigation between NEC and Ph on behalf of Ph; and, (3) Hurt had an opportunity to present a defense to the claim against Ph by NEC.

Hurt appeals the order granting NEC's motion to amend the judgment. He asserts four points on appeal. First, Hurt argues that he was not the alter

ego of Ph. Second, Hurt contends that he did not have an opportunity to present a defense in the initial litigation. Third, Hurt urges that there was insufficient evidence to establish that he controlled the litigation between Ph and NEC. Finally, Hurt claims that NEC is estopped to add Hurt as a judgment debtor because NEC knew of Hurt's relationship with Ph when it filed its lawsuit against Ph.

In reviewing Hurt's contentions, we must consider whether the trial court's findings are supported by substantial evidence. (*Dow Jones Co.* v. *Avenel* (1984) 151 Cal.App.3d 144, 151 [198 Cal.Rptr. 457].) With this standard in mind, we next turn to the arguments presented by Hurt.

## DISCUSSION

I. *Alter Ego Liability.*

Hurt's first argument is that there was insufficient evidence to show that Hurt was the alter ego of Ph. We disagree.

There are two general requirements for disregarding the corporate entity. First, there must be "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist." (*Automotriz etc. De California* v. *Resnick* (1957) 47 Cal.2d 792, 796 [306 P.2d 1, 63 A.L.R.2d 1042].) Second, it must be demonstrated that "if the acts are treated as those of the corporation alone, an inequitable result will follow." (*Ibid.*) "When considering the application of the alter ego doctrine to a particular situation, it must be remembered that it is an equitable doctrine and, though courts have justified its application through consideration of many factors, their basic motivation is to assure a just and equitable result." (*Alexander* v. *Abbey of the Chimes* (1980) 104 Cal.App.3d 39, 48 [163 Cal.Rptr. 377].)

Hurt concedes that there is evidence of unity of interest and ownership between Hurt and Ph. However, he argues that the evidence does not establish that an inequitable result will follow if the acts are treated as Ph's alone. Hurt claims that the only inequity to NEC is its inability to collect from Ph.

We reject this argument. The evidence discloses that Hurt depleted the assets of Ph by receiving approximately $2.8 million in "loans" and by using corporate moneys to pay for his personal expenses. Although the evidence reveals that Hurt paid back a portion of this sum, there is still a dispute over whether Hurt owes Ph additional amounts. Quite clearly, this evidence demonstrates that Hurt manipulated the assets of Ph to the

detriment of Ph's creditors. As a consequence, there is substantial evidence to support the trial court's conclusion that Hurt's manipulation of the assets of Ph produced an inequity to NEC and that Hurt was indeed Ph's alter ego. (*Associated Vendors, Inc.* v. *Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 840-842 [26 Cal.Rptr. 806].)

II. *Authority of the Court to Amend the Judgment to Add Additional Judgment Debtors.*

■ Hurt argues that he did not control or have an opportunity to present a defense in the underlying action between Ph and NEC. For these reasons, Hurt urges that the court improperly amended the judgment to add him as an additional judgment debtor. We agree.

Section 187 of the Code of Civil Procedure grants to every court the power to use all means to carry its jurisdiction into effect, even if those means are not set out in the code.[1] (*Fairfield* v. *Superior Court* (1966) 246 Cal.App.2d 113, 120 [54 Cal.Rptr. 721].) ■ Under section 187, the court has the authority to amend a judgment to add additional judgment debtors. (*Dow Jones Co.* v. *Avenel, supra,* 151 Cal.App.3d 144 at p. 148.)

Judgments are often amended to add additional judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor. (*Farenbaugh & Son* v. *Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1029 [240 Cal.Rptr. 78]; *Mirabito* v. *San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54, 60 [47 P.2d 530].) This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. (*Mirabito* v. *San Francisco Dairy Co., supra,* 8 Cal.App.2d at p. 57; *Thomson* v. *L.C. Roney & Co., Inc.* (1952) 112 Cal.App.2d 420, 428-429 [246 P.2d 1017].) ■ "Such a procedure is an appropriate and complete method by which to bind new individual defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit." (1A Ballantine & Sterling, Cal. Corporation Laws (4th ed.) § 299.04, p. 14-45.) In other words, "[i]f the claim of individual liability is made at some later stage in the action, the judgment can be made individually binding on a person associated with the corporation only if the

---

[1] Section 187 of the Code of Civil Procedure states: "When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

individual to be charged, personally or through a representative, had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved." (Rest.2d, Judgments, § 59, p. 102.)

In *Motores De Mexicali* v. *Superior Court* (1958) 51 Cal.2d 172 [331 P.2d 1], the plaintiff obtained a default judgment against Erbel, Inc. Shortly thereafter, Erbel went into bankruptcy. The plaintiff then filed a petition in the superior court seeking an order amending the judgment against Erbel to add the names of three individuals. In the petition, plaintiff alleged that the three individuals were the alter ego of Erbel.

The Supreme Court refused to allow the amendment. It emphasized that the three individuals in no way participated in the defense of the action against Erbel and that the judgment was entered by default. Moreover, the court concluded that amending the judgment would violate due process. It stated: "To summarily add Resnick and the Cowans to the judgment heretofore running only against Erbel, Inc., without allowing them to litigate any questions beyond their relation to the allegedly *alter ego* corporation would patently violate this constitutional safeguard. Nor is this difficulty overcome by the suggestion that Resnick and the Cowans should have intervened in the action brought solely against Erbel, Inc., if they desired to assert any personal defenses against the drafts. They were under no duty to appear and defend personally in that action, since no claim had been made against them personally." (51 Cal.2d at p. 176.)

In *Dow Jones Co.* v. *Avenel, supra,* 151 Cal.App.3d 144, plaintiff's motion for summary judgment was granted and plaintiff then moved to amend the judgment to add additional judgment debtors. The new judgment debtors argued that amendment was improper because they did not actually litigate the issue of their liability in the hearing on the motion for summary judgment. The court rejected this contention and stated "While appellants, themselves, technically were not given the opportunity to convince the trial court that material issues of fact did exist because they were not then named parties, they were able to do so through the vehicle of Communimark. Communimark did present a defense at that first, summary judgment hearing. It apparently however, presented no material issue of fact, perhaps because none existed." (*Id.* at p. 150.)

In *Farenbaugh & Son* v. *Belmont Construction, Inc., supra,* 194 Cal.App.3d at page 1023, a judgment obtained after trial was amended to add an additional judgment debtor. In that case, the court emphasized that the newly added judgment debtor "was not a passive participant by any manner of means in the original trial. . . . We are satisfied that appellant's

involvement at trial satisfies the elements of fair trial as required by due process." (*Id.* at p. 1031.)

Finally, in *Mirabito* v. *San Francisco Dairy Co., supra,* 8 Cal.App.2d 54, a judgment was amended based upon allegations of alter ego. In allowing the judgment to be amended, the court stated: "[T]he evidence is sufficient to warrant the conclusion that in effect the two corporations are identical; . . . the action was fully and fairly tried with at least the direct financial assistance of appellant; and . . . nothing appears in the record to show that [the alter ego] could have produced a scintilla of evidence that would have in any way affected the results of the trial . . . . To hold otherwise upon the facts herein would be to deny respondent the fruits of fairly contested litigation, place a premium upon acts and conduct which have misled a litigant, and frustrate the very purpose of our jurisprudence." (*Id.* at p. 60.)

■ In *Dow Jones Co., Farenbaugh* and *Mirabito,* the underlying action was contested and therefore the alter ego's interests were effectively represented by the defense presented by the corporate defendant. By contrast, in *Motores,* where the judgment was obtained by default, the court stressed that the alter ego's interests were not represented in the underlying action and also emphasized that adding them as additional judgment debtors would violate due process. We believe that *Motores* should control the result here. Ph did not appear at trial and did not make any attempt to defend the NEC lawsuit. As a consequence, we do not believe that Hurt's interests were represented in the underlying action.

Moreover, amendment is also improper in this case because Ph's interests and Hurt's interests were not the same. The evidence reveals that Ph believed it had a defense to the NEC action but nevertheless let the matter proceed uncontested because it planned to file a chapter 11 bankruptcy petition. Ph, having been sued in its corporate capacity, simply had no incentive to defend the NEC lawsuit because Ph was on the verge of bankruptcy. This situation contrasts with the usual scenario where the interests of the corporate defendant and its alter ego are similar so that the trial strategy of the corporate defendant effectively represents the interests of the alter ego. NEC's argument that Hurt had an opportunity to present a defense in the original action ignores these realities. ■ Hurt was not named as a party, had no risk of personal liability and therefore was not required to intervene. (*Motores De Mexicali* v. *Superior Court, supra,* 51

Cal.2d at p. 176.) ■■ Because the interests of Ph and Hurt were different, we cannot say that Hurt had occasion to conduct the litigation with a diligence corresponding to the risk of personal liability that was involved or that Hurt was virtually represented in the lawsuit.

Finally, there is insufficient evidence to show that Hurt controlled the defense of the litigation. There was no defense for Hurt to control. After Ph filed its general denial, no further proceedings were conducted. Neither party conducted any discovery. Most importantly, Ph did not appear at trial. Although Ph and Hurt were continuously involved in efforts to satisfy Ph's creditors, including NEC, this effort was part of Ph's general attempts to avoid bankruptcy. It certainly does not constitute control of the defense of the underlying action. Moreover, it is not enough that Hurt was "aware" of the action between NEC and Ph. Surely every chief executive officer of a corporation is cognizant of claims asserted against the corporation.

■■ "Control of the litigation sufficient to overcome due process objections may consist of a combination of factors, usually including the financing of the litigation, the hiring of attorneys, and control over the course of the litigation." (1A Ballantine & Sterling, Cal. Corporation Laws (4th ed.) § 299.04, pp. 14-45–14-46, fn. omitted.) Clearly, some active defense of the underlying claim is contemplated. (*Minton* v. *Cavaney* (1961) 56 Cal.2d 576, 581 [15 Cal.Rptr. 641, 364 P.2d 473].) ■■ In this case, Hurt delegated responsibility for the claim to Finelli. Finelli and Hurt did attempt to satisfy the creditors of Ph but were never actively involved in defending the NEC lawsuit. As a result, we do not believe that there is substantial evidence to support the trial court's conclusion that Hurt controlled the action between NEC and Ph.

III. *Conclusion.*

We conclude that there was insufficient evidence to show that Hurt had an opportunity to litigate the underlying action between NEC and Ph and also insufficient evidence to prove that Hurt controlled the defense of that action. As a result, we need not consider Hurt's last argument that NEC was estopped to add Hurt as a judgment debtor.

The order of the trial court amending the judgment to name Hurt as an additional judgment debtor is reversed.

Agliano, P. J., and Brauer, J., concurred.