Filed 10/25/16

# CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WOLF METALS INC., | B264002 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VC055239) |
| v. | |
| RAND PACIFIC SALES INC. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed in part, reversed in part.

David S. Kim & Associates, David S. Kim and Arman Matevosyan for Defendants and Appellants Donald Koh and South Gate Steel, Inc.

Ferruzzo & Ferruzzo and James F. Rumm for Plaintiff and Respondent.

In the underlying action, the trial court entered a default judgment in favor of respondent Wolf Metals Inc., on its complaint against Rand Pacific Sales, Inc. (RPS). Following efforts to enforce the judgment, Wolf Metals requested that the judgment be amended to name appellants Donald Koh and South Gate Steel, Inc. (SGS) as additional judgment debtors. The trial court granted the request, concluding that Koh was RPS's alter ego and that SGS was RPS's successor corporation. On appeal, Koh and SGS challenge the amendment to the default judgment. We conclude that pursuant to our Supreme Court's decision in *Motores de Mexicali v. Superior Court* (1958) 51 Cal.2d 172 (*Motores)*, the default judgment could not be amended to add Koh as an alter ego to the judgment. We further conclude that the judgment was properly amended to add SGS as a corporate successor. Accordingly, we reverse the amended judgment in part and affirm it in part.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Wolf Metals's complaint, filed December 23, 2009, asserted claims for open book account, account stated, and breach of contract against RPS. The complaint alleged that from March 2008 to August 2009, Wolf Metals sold sheet metal to RPS pursuant to an oral agreement. The complaint further alleged that RPS owed Wolf Metals the sum of $292,055.93, which RPS had failed to pay despite Wolf

2

Metals's demand.  In February 2010, RPS answered the complaint.

In June 2010, RPS filed a petition for Chapter 7 bankruptcy protection (11 U.S.C. § 701 et seq.).  The petition was executed by Koh as RPS's president.  As a result of the bankruptcy proceeding, the underlying action was stayed.  In the course of the bankruptcy proceeding, Wolf Metals asserted a claim for $298,805.91 as an unsecured creditor on the basis of "[g]oods sold."  Koh and SGS also asserted claims as unsecured creditors.  On July 14, 2011, the bankruptcy court ordered the case closed.  In connection with that order, the docket for the bankruptcy proceeding states, "no discharge."  (Capitalization omitted.)

In September 2011, upon notice by Wolf Metals that the bankruptcy proceeding had closed without a discharge, the trial court authorized Wolf Metals to resume litigation of its claims against RPS.  After RPS's counsel repeatedly failed to attend scheduled hearings, the court ordered RPS's answer stricken and entered RPS's default.  On July 20, 2012, the trial court entered a default judgment in Wolf Metals's favor, awarding $292,055.093 in damages, together with $70,400 in pre-judgment interest and $430.00 in costs.

RPS did not satisfy the judgment.  In December 2012, in an effort to enforce the judgment, Wolf Metals arranged for a judgment debtor examination of  Koh and his wife, who is RPS's secretary and treasurer.  After initially refusing to answer questions, they were examined and excused.  Later, when Wolf Metals propounded discovery seeking RPS's

records, Koh replied that he had none, stating that all such documents had been transferred to the bankruptcy trustee or discarded. In September 2014, Wolf Metals filed motions to compel responses to its post-judgment special interrogatories and request for the production of documents. The trial court granted the motions and issued an award of sanctions against RPS totaling $1,245. In January 2015, Wolf Metals conducted a second judgment debtor examination of Koh.

Following that examination, Wolf Metals filed a motion under Code of Civil Procedure section 187, seeking to amend the default judgment to name Koh and SGS as additional judgment debtors. On March 19, 2015, the trial court issued a written order granting the request, concluding that Koh was RPS's alter ego and that SGS was a successor corporation of RPS. Koh and SGS noticed their appeal from that order. On May 4, 2015, the court entered an amended default judgment naming Koh and SGS as additional judgment debtors.[1]

---

[1] Appellants' notice of appeal was premature, as only the amended default judgment is appealable. (See *McClellan v. Northridge Park Townhome Owners Assn.* (2001) 89 Cal.App.4th 746, 751.) However, because Wolf Metals has not objected to the premature notice of appeal, we find good cause to treat the notice as having been filed immediately after the May 4, 2015 judgment. (Cal. Rules of Court, rule 8.104(d)(2); *Stonewall Ins. Co v. City of Palos Verdes Estates* *(Fn. is continued on next page.)*

4

## DISCUSSION

Koh and SGS contend the trial court erred in amending the default judgment to include them as judgment debtors. For the reasons discussed below, we agree that under controlling authority Koh was improperly named a judgment debtor on an "alter ego" theory, but conclude that SGS was properly named as a judgment debtor as RPS's successor corporation.

### A. *Governing Principles*

Under Code of Civil Procedure section 187, "the trial court has jurisdiction to modify a judgment to add additional judgment debtors."[2] (*McClellan, supra*, 89 Cal.App.4th at p. 752.) The decision to modify the judgment is consigned to the trial court's discretion. (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 508.) To the extent the exercise of that discretion relies on factual findings, we review those

---

(1996) 46 Cal.App.4th 1810, 1827-1828; see *McClellan, supra*, 89 Cal.App.4th at p. 751.)

[2]     Code of Civil Procedure section 187 provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

findings for the existence of substantial evidence. (*McClellan*, *supra*, 89 Cal.App.4th at pp. 751-752.)

### 1. *Addition of Judgment Debtor as Alter Ego*

Modification of a judgment may be proper when the newly-named defendant is an existing defendant's alter ego. (*McClellan*, *supra*, 89 Cal.App.4th at pp. 752-757.) "Under the alter ego doctrine, . . . when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons . . . actually controlling the corporation, in most instances the equitable owners. [Citations.] The alter ego doctrine prevents individuals . . . from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds. [Citation.]" (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538.)

In the case of default judgments, the application of the alter ego doctrine is subject to a limitation arising from considerations of due process. Under Code of Civil Procedure section 187, "to amend a judgment to add a defendant, thereby imposing liability on the new defendant without trial, requires *both* (1) that the new party be the alter ego of the old party *and* (2) that the new party . . . controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns. The due process considerations are in addition to, *not in lieu of*, the

6

threshold alter ego issues." (*Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1421.)

The due process-related requirement was first recognized by our Supreme Court in *Motores, supra,* 51 Cal.2d 172. There, three individuals formed a corporation that engaged in the sale of used cars. (*Id.* at pp. 173-174.) When the plaintiff sued the corporation for failure to pay some loans, neither the corporation nor the individuals operating it appeared in the action, and a default judgment was entered against the corporation. (*Ibid.*) When the plaintiff sought to modify the default judgment to include the three individuals as judgment debtors on an alter ego theory, the trial court declined to do so. (*Id.* at p. 176.) Affirming that ruling, the court concluded that the Fourteenth Amendment of the United States Constitution precluded the modification, stating: "That constitutional provision guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses. [Citations.] To summarily add [the three individuals] to the judgment heretofore running only against [the corporation] without allowing them to litigate any questions beyond their relation to the allegedly *alter ego* corporation would patently violate this constitutional safeguard. . . . They were under no duty to appear and defend personally in that action, since no claim had been made against them personally." (*Motores, supra,* at p. 176.)

In *NEC Electronics, Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 775-781 (*NEC Electronics*), the appellate court reached a similar conclusion, even though the pertinent judgment arose from the corporate defendant's failure to litigate its defenses at trial, rather than from a default. When the plaintiff sued the corporation for nonpayment of purchased goods, the corporation filed a general denial. (*Id.* at p. 775.) Prior to trial, the corporation's chief executive officer -- who was also its sole shareholder -- discussed the corporation's potential bankruptcy and reorganization with the plaintiff. (*Ibid.*) Shortly before trial, the corporation gave notice that it would not appear. (*Id.* at pp. 775-776.) After the plaintiff presented its evidence at trial, a judgment was entered in its favor against the corporation, which filed a bankruptcy petition. (*Id.* at p. 776.) Later, after the bankruptcy proceeding closed, the trial court granted the plaintiff's petition to add the corporation's chief executive officer as a judgment debtor, reasoning that he knew of the lawsuit and was involved in the corporation's decisions regarding it. (*Ibid.*) Relying on *Motores*, the appellate court reversed, concluding that the chief executive officer neither shared the corporation's interests nor controlled its defense. (*Id.* at pp. 780-781.) The court remarked: "There was no defense for [him] to control. After [the corporation] filed its general denial, no further proceedings were conducted." (*Id.* at p. 781.)

## 2. *Addition of Judgment Debtor As Successor Corporation*

Modification of a judgment may also be proper under the "successor corporation" theory. (*McClellan, supra*, 89 Cal.App.4th at pp. 753, 754-756, italics omitted.) According to that theory, when a corporation sells or transfers all of its assets to another corporation constituting its "'mere continuation,'" the latter is also liable for the former's debts and liabilities. (*Id.* at p. 754, fn. 4, quoting *Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 29.) Generally, "'California decisions holding that a corporation acquiring the assets of another corporation is the latter's mere continuation and therefore liable for its debts have imposed such liability only upon a showing of one or both of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; (2) one or more persons were officers, directors, or stockholders of both corporations. [Citations.]'" (*McClellan, supra*, 89 Cal.App.4th at p. 754, fn. 4, quoting *Ray, supra*, 19 Cal.3d at p. 29.)

In view of the nexus between a corporation and a second corporation constituting its "'mere continuation,'" when a judgment is entered against the former due to a failure to present a defense, the judgment may be modified to name the latter as an additional judgment debtor without contravening due process. (*McClellan, supra*, 89 Cal.App.4th at pp. 754, fn.4 & 754-757.) In *McClellan*, a

9

corporation hired a contractor to repair its condominium complex.  (*Id.* at p. 749.)  After the corporation did not pay for the services, the contractor initiated an arbitration proceeding against it.  (*Ibid.*)  When the corporation failed to appear at the arbitration, the arbitrator issued a default award, and the contractor filed a petition for a judgment confirming the award.  (*Ibid.*)  Shortly before that judgment was entered, the corporation's board of directors caused the creation of a new corporation and transferred the condominium complex to it.  (*Id.* at p. 750.)  Later, the trial court granted the contractor's request to modify the judgment to include the new corporation as a judgment debtor, finding that it was the original corporation's successor.  (*Id.* at p. 751.)

Affirming, the appellate court concluded that the new corporation was the original corporation's "mere continuation."  (*McClellan, supra*, 89 Cal.App.4th at pp. 755-756.)  In so concluding, the court observed that both corporations shared the same board, which had transferred the condominium complex in contravention of the applicable covenants, conditions, and restrictions, and never dissolved the original corporation.  (*McClellan, supra*, 89 Cal.App.4th at pp. 755-756.)  The court rejected a contention under *NEC Electronics* that the new corporation lacked the opportunity to litigate in the underlying action, stating:  "[The new corporation] is a mere continuation of the [original corporation] under a different name.  Therefore, [the new corporation] cannot be heard to complain that because it did

not exist at the time the arbitration award was entered, its interests were not represented in the underlying action." (*Id*. at p. 757.)

B. *Underlying Proceedings*

At the January 2015 judgment debtor examination, Koh testified as RPS's president. According to Koh, RPS's board of directors consisted of Koh and his wife, who also served as RPS's secretary and treasurer. The sole shareholder was a Koh family trust. RPS engaged in "[s]teel purchase and sales," that is, it bought steel coil from suppliers, including Wolf Metals, cut the coil, and then sold it as a finished product. RPS always conducted its operations at a single location, and had 10 to 20 employees.

Koh also operated SGS. As with RPS, Koh's wife acted as SGS's secretary and treasurer. While RPS was active, SGS supplied steel to RPS and cut the steel for RPS. Koh denied that SGS engaged in the same business as RPS.

In the course of RPS's operations, Koh and RPS made loans to each other. At some point, RPS secured a loan from Koh, and discharged the loan by transferring equipment valued at $29,000 to him. According to Koh, no document expressly established the existence of the loan. He further testified that he had no records for RPS because they had been discarded or transferred to the bankruptcy trustee.

In 2010, upon initiating bankruptcy proceedings, RPS stopped doing business and sold its remaining inventory.

During the proceedings, SGS asserted an unsuccessful claim for $11,458 as an unsecured creditor.

After the bankruptcy closed, RPS never resumed operations. Koh described its current status as "[n]othing" because it had filed no tax returns for several years. He further stated that because RPS had been "thrown away," SGS had taken possession of RPS's remaining furniture and other items, which he described as "abandoned." When asked whether SGS employed any of RPS's employees, Koh replied, "Yes." Koh testified that RPS would neither satisfy the judgment nor pay the sanctions owed to Wolf Metals, stating that RPS was "no longer there" and that he was "not [RPS] anymore."

Following the January 2015 judgment debtor examination, Wolf Metals filed its motion to amend the default judgment, contending that Koh and SGS were RPS's alter egos and that SGS was a mere continuation of RPS. In addition to Koh's testimony at the January 2015 examination, Wolf Metals submitted evidence that SGS was engaged in the same business as RPS at its former location, and that Koh was the agent for service of both entities. Wolf Metals's showing included photos of RPS's building in 2007 and photos of the same building in 2014, which then served as SGS's business location. In 2007, the building's front sign displayed RPS's name, two phone numbers, and the following description of its services: "Specialist on narrow cut slit coils [] Max capacities ¼ thick to ½" width [] Round edged flat bars & coils." In 2014, when SGS occupied the

12

building, RPS's name was absent, but the building's front sign was otherwise unchanged, and advertised the same services. Wolf Metals also submitted an image of SGS's Web site as it appeared in 2011. The description of SGS's services on the Web site closely tracked the advertisement on the building's front sign.

Appellants' opposition neither disputed Wolf Metals's evidentiary showing nor offered new evidence. In addition to contending that the proposed amendments were improper under *Motores* and *NEC Electronics*, appellants argued that Wolf Metals failed to act with due diligence in seeking the amendments.

In granting the motion to amend the default judgment, the trial court found that Koh and SGS were RPS's alter egos and that SGS was RPS's successor. The court rejected appellants' contention that Wolf Metals had failed to act with due diligence, stating that RPS did not respond to the post-judgment discovery propounded by Wolf Metals, which "learned of the extent to which . . . [SGS] stepped into the shoes of [RPS] at the January 2015 debtor's examination."

C. *Analysis*

As explained below, we conclude (1) that under *Motores*, Koh was improperly added as a judgment debtor on an "alter ego" theory, and (2) that SGS was properly added as a judgment debtor as a mere continuation of RPS.

13

### 1. *No Discharge in the Bankruptcy Proceeding*

At the threshold, we examine appellants' contention that the trial court's ruling contravenes a determination by the bankruptcy trustee and the bankruptcy court. Appellants rely on the bankruptcy trustee's final report prior to the closing of the bankruptcy proceeding, which states: "I have made a diligent inquiry into the financial affairs of the debtor . . . [RPS.] . . . [T]here is no property available for distribution from the estate over and above that exempted by law. . . . I hereby certify that the estate of the above-named debtor(s) has been fully administered. . . . Claims scheduled to be discharged without payment. . . : $286,469.47." Notwithstanding the entry in the bankruptcy court's docket reflecting that the proceeding closed with "no discharge," appellants argue that the trustee's report establishes the existence of a ruling that Wolf Metals's claims against RPS were "to be discharged without payment." (Underlining omitted.)

Appellants' contention fails, as no such ruling is available in a chapter 7 bankruptcy proceeding. Section 727(a)(1) of title 11 of the United States Code expressly states: "'The court shall grant the debtor a discharge unless . . . the debtor is not an individual.'" Thus, a corporation may not discharge its debts and liabilities in a chapter 7 proceeding. (*N.L.R.B. v. Better Bldg. Supply Corp.* (9th Cir. 1988) 837 F.2d 377, 378.)

As such a proceeding also does not dissolve a corporation -- which must be accomplished under state

14

procedures -- corporate debts and liabilities survive the closing of the bankruptcy proceeding.  (*N.L.R.B. v. Better Bldg. Supply Corp.*, *supra*, 837 F.2d at p. 379.)  For that reason, responsibility for those debts and liabilities may be imposed on other parties under "alter ego" and "successor corporation" theories.  (*Id.* at pp. 379-380; *In re Goodman* (2d. Cir. 1989) 873 F.2d 598, 602.)  Accordingly, the bankruptcy proceeding did not preclude the amendment of the judgment to include appellants as judgment debtors.[3]

---

[3]     For the first time on appeal, appellants' reply brief contends the "findings" of the bankruptcy trustee precluded Wolf Metals from asserting that SGS is a mere continuation of RPS.  Because they did not raise this contention in their opening brief, they have forfeited it.  (*Campos v. Anderson (*1997) 57 Cal.App.4th 784, 794, fn. 3; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, pp.769-771.)  Moreover, were we to address it, we would reject it.  Under the doctrine of collateral estoppel, a finding from a prior proceeding has preclusive effect with respect to an issue only when that issue was "actually litigated" and "necessarily decided" in the prior proceeding (*People v. Garcia* (2006) 39 Cal.4th 1070, 1077; see *Chinese Yellow Pages Co. v. Chinese Overseas Marketing Service Corp.* (2008) 170 Cal.App.4th 868, 888 [bankruptcy court's ruling had no preclusive effect regarding issues not actually adjudicated].)  Nothing before us suggests that those requirements were satisfied here.

## 2. *Judgment Improperly Amended Under "Alter Ego" Theory*

We turn to appellants' contention that the judgment was erroneously amended to include Koh as a judgment debtor on the basis of an "alter ego" theory. That amendment was improper under *Motores*, which involved facts materially identical to those presented here. Like the defendant corporation in *Motores*, RPS offered no evidence-based defense in the underlying action, and the judgment against RPS was entered by default.[4] Although Koh dominated RPS and knew of Wolf Metals's suit against RPS, his circumstances do not differ from the individuals who dominated the defendant corporation in *Motores*. Because *Motores* held that the latter individuals were improperly added as judgment debtors, it precludes the inclusion of Koh as judgment debtor on an "alter ego" theory.[5]

---

[4] We recognize that unlike the defendant corporation in *Motores*, RPS filed an answer that was later stricken. However, that factual difference is not material in view of *NEC Electronics*, in which the defendant corporation filed an answer but failed to present an evidence-based defense before judgment was entered against it. (*NEC Electronics, supra,* 208 Cal.App.3d at pp. 775-781.)

[5] Wolf Metals argues that declining to recognize Koh as a judgment debtor would encourage alter egos of corporations to avoid corporate liabilities by ensuring that the corporations default in actions against them. While we recognize the merits of that policy consideration, the rule *(Fn. is continued on next page.)*

The decisions upon which Wolf Metals relies are distinguishable, as in each case, the original corporate defendant presented an evidence-based defense prior to the amendment of the judgment. (*Schoenberg v. Romike Properties* (1967) 251 Cal.App.2d 154, 166-167 [judgment properly amended to include defendant corporation's shareholders and officers following jury trial]; *Farenbaugh & Son v. Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1026-1031 [judgment properly amended to include defendant corporation's president following bench trial]; *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1110 [arbitration-based judgment against two corporations properly amended to include additional corporation as judgment debtor, as arbitration was contested].) As explained above, RPS offered no defense to Wolf Metals's suit, and the judgment against it was entered by default. Accordingly, the trial court erred in amending the default judgment to include appellants as judgment debtors on the basis of an "alter ego" theory.

---

established in *Motores* over half a century ago is binding on us. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

17

### 3. *Judgment Properly Amended With Respect to SGS Under "Successor Corporation" Theory*

We reach the contrary conclusion regarding the amendment relating to SGS based on the "successor corporation" theory. Under that theory, "'corporations cannot escape liability by a mere change of name or a shift of assets when and where it is shown that the new corporation is, in reality, but a continuation of the old. Especially is this well settled when actual fraud or the rights of creditors are involved, under which circumstances the courts uniformly hold the new corporation liable for the debts of the former corporation.'" (*Cleveland v. Johnson* (2012) 209 Cal.App.4th 1315, 1327 (*Cleveland*), quoting *Blank v. Olcovich Shoe Corp.* (1937) 20 Cal.App.2d 456, 461.) The application of the theory presents "'equitable issues to be examined 'on their own unique facts . . . .'" (*Cleveland*, *supra*, 209 Cal.App.4th at p. 1330, quoting *CenterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1122.)

Here, the evidence establishes that although SGS's creation predated RPS's bankruptcy proceeding, SGS merely continued RPS's business operations under a different name. According to Wolf Metals's showing, Koh "ran" both corporations, which share the same president, secretary, treasurer, business location, and agent for service. After the bankruptcy proceeding closed, RPS was never dissolved. SGS took possession of RPS's remaining assets and offered services identical to those provided by RPS, using RPS's

18

employees.  Koh testified that RPS had been "thrown away" and was "no longer there," and that he was "not [RPS] anymore."  Wolf Metals's evidence also showed that prior to RPS's bankruptcy, Koh obtained RPS's equipment as the purported repayment of a loan to RPS.  As the trial court observed, at the January 2015 judgment debtor examination, Koh was unable to explain his transactions with RPS and SGS "whereby the funds and assets of [RPS] were com[m]ingled with [those] of [SGS] and his own personal finances."  In view of this evidence, the court reasonably concluded that SGS was a mere continuation of RPS.

Appellants contend the trial court violated SGS's due process rights in amending the default judgment because SGS's interests differed from RPS's interests in the underlying action, and it lacked control over RPS's defense. In our view, that contention fails in light of *McClellan*, which concluded that when a judgment is entered against a corporation due to its failure to litigate a defense, due process is not contravened by the amendment of the judgment to include a corporation that is the defendant's mere continuation.  (*McClellan, supra*, 89 Cal.App.4th at pp. 756-757.)

In a related contention, appellants suggest that there was no evidence that SGS paid inadequate consideration for the assets it received from RPS.  Inadequacy of consideration, however, is not required for the application of the "'successor corporation'" theory.  (*Cleveland, supra*, 209

19

Cal.App.4th at pp. 1332, 1333-1334.) Furthermore, the record discloses evidence sufficient to establish that factor. Following RPS's bankruptcy proceeding, SGS simply took possession of RPS's remaining furniture and other items. In addition, prior to the bankruptcy proceeding, Koh secured equipment from RPS valued at $29,000, a sum that exceeds the $11,458 claim that SGS asserted in the proceeding. Koh provided no document establishing the existence of the purported loan underlying the transfer of the equipment. As the record shows that contrary to Koh's testimony, SGS operated in a manner identical to RPS at RPS's business location, the trial court reasonably could have concluded that Koh's purported acquisition of the equipment was, in fact, a consideration-free transfer of equipment to SGS.

Pointing to *McIntire v. Superior Court* (1975) 52 Cal.App.3d 717, appellants contend the trial court erred in determining that Wolf Metals exercised due diligence in seeking the amendment relating to SGS. In *McIntire*, following the dismissal of fictitious defendants and the presentation of evidence at trial, the plaintiffs entered into a settlement with the named defendants, which the court approved. (*McIntire*, *supra*, 52 Cal.App.3d at p. 717.) After the time for an appeal from the approval passed, the plaintiffs sought to amend the complaint to name as defendant an individual who had testified at trial. (*Id*. at pp. 719-721.) The appellate court held that any such amendment was improper, as the plaintiffs were aware of the individual's potential involvement in the action before

20

trial.  (*Id*. at p. 721.)  Relying on *McIntire*, appellants argue that the amendment relating to SGS was improper because Wolf Metals conducted business with Koh before RPS's bankruptcy proceedings, in which Wolf Metals, Koh, and SGS asserted claims.

We reject that contention, as nothing suggests that prior to Koh's January 2015 judgment debtor examination, Wolf Metals knew, or should have known, that SGS was a mere continuation of RPS.  The records from the bankruptcy proceedings show only that SGS identified itself as an unsecured creditor of RPS.  Although Wolf Metals conducted a judgment debtor examination of Koh and his wife in December 2012, the record does not disclose their testimony.  As the trial court observed, RPS otherwise failed to respond to Wolf Metals's post-judgment discovery prior to the January 2015 judgment debtor examination, which alerted Wolf Metals to SGS's close relationship to RPS.  The trial court thus reasonably rejected appellants' contention that Wolf Metals failed to act with due diligence.  In sum, SGS was properly named as a judgment debtor on a "successor corporation" theory.

**DISPOSITION**

The amended judgment is reversed insofar as it names Koh as a defendant, and is affirmed in all other respects. The parties are to bear their own costs on appeal.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.

We concur:


EPSTEIN, P. J.


COLLINS, J.