Filed 12/16/22  Beveridge v. Solorzano CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. BEVERIDGE, | D079070 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2016-00038444-CU-BC-CTL) |
| YOLANDA SOLORZANO, | |
| Defendant and Respondent. | |

APPEAL from a postjudgment order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Keith H. Rutman for Plaintiff and Appellant.

Niddrie Addams Fuller Singh and Rupa Singh for Defendant and Respondent.

I

INTRODUCTION

Michael J. Beveridge secured a default judgment against Makeover Max, Inc. (hereafter, Makeover Max) in a case involving the breach of a construction contract.  Then, he moved to amend the judgment to add former

Makeover Max officer and shareholder Yolanda Solorzano as an alter ego judgment debtor under Code of Civil Procedure section 187.[1] The trial court denied the motion, finding Beveridge failed to demonstrate either that Solorzano controlled the underlying litigation between Beveridge and Makeover Max, or that she and the company had a unity of interest and ownership—both of which were necessary conditions to add Solorzano as an alter ego judgment debtor.

We agree with the trial court that Beveridge did not establish Solorzano's control over the underlying litigation and affirm the denial order on that basis. Because we affirm the denial order on this basis, it is unnecessary for us to determine whether there was a unity of interest and ownership between Solorzano and Makeover Max.

## II

## BACKGROUND

A. *The Construction Contract*

In 2012, Beveridge retained Makeover Max to complete construction and repair projects at his residence. The parties signed a written construction contract, effective November 3, 2012. Frank Rogers (Rogers), a Makeover Max salesperson and Solorzano's husband, entered into the construction contract on behalf of the company.

At the time the construction contract was signed, Solorzano served as the chief financial officer and secretary of Makeover Max. Iliana Rogers Solorzano (Iliana), the daughter of Solorzano and Rogers, served as the company's chief executive officer. Solorzano owned 90 percent of the company's shares and a third party owned 10 percent of its shares.

---

[1]     Further undesignated statutory references are to the Code of Civil Procedure.

2

Makeover Max began work under the construction contract, but Beveridge was dissatisfied with the progress and quality of the work. On or about March 25, 2013, he retained another construction firm to inspect and repair Makeover Max's work.

B. *The Litigation*

On October 31, 2016, Beveridge filed a complaint against Makeover Max, Solorzano, and Iliana for breach of contract, deceit, fraud in the inducement, and negligent misrepresentation based on the company's allegedly deficient work. All three defendants defaulted and default judgments were entered against them on June 26, 2017. Thereafter, Solorzano and Iliana appeared in the action and moved to set aside their defaults and default judgments due to defective service of summons. The court set aside the defaults and default judgments against them, leaving intact a default judgment against Makeover Max for $53,813.

In February 2019, the case proceeded to trial on Beveridge's claims against Solorzano and Iliana. However, soon after trial began, Beveridge voluntarily dismissed these claims. Rather than proceeding against Solorzano and Iliana individually, he decided to pursue a theory that they were liable as alter egos of Makeover Max.

After it became apparent that Beveridge intended to pierce the corporate veil, Solorzano filed a motion to vacate the default and default judgment against Makeover Max on grounds that the company was not served with process. She stated she was no longer an officer or shareholder of the company, but she argued she should nonetheless be allowed to pursue the requested relief because the default judgment had a "profound effect" on her. She argued that Beveridge planned to move to amend the default judgment to add her as an alter ego judgment debtor and, "[w]ithout the default

3

judgment, there would be absolutely no claim" against her. The court denied the motion for reasons that are not apparent from the record.

Over the ensuing year, Beveridge conducted virtually no discovery on the issue of alter ego status. Nonetheless, on June 12, 2020, he moved to amend the judgment to add Solorzano as a judgment debtor.[2] He argued there was a unity of interest and ownership between Makeover Max and Solorzano because: (1) she and her family members organized, operated, and managed the company; (2) she was at one point an officer and majority shareholder of the company; and (3) she purportedly commingled corporate and personal funds and treated corporate assets as her own.

In support of his claim of comingled funds and personal use of corporate assets, Beveridge filed records obtained from Solorzano's personal bank account. The records included 14 checks ranging in amount from $2,000–$5,000, which Makeover Max periodically issued to Solorzano in 2012 and 2013. They also included seven more recent deposit slips reflecting deposits into Solorzano's account. The deposits ranged in amount from $10,000–$22,768. The deposit slips did not disclose the source of the deposited funds.

On June 26, 2020, Solorzano opposed the motion to add her as an alter ego judgment debtor. She argued the motion should be denied because Beveridge failed to establish that she had control over the underlying litigation between Beveridge and Makeover Max. According to Solorzano, she resigned as a corporate officer and relinquished all of her shares to Rogers on June 24, 2013. She argued she did not even have the authority to hire

---

[2]    Beveridge also moved to amend the judgment to add Iliana as an alter ego judgment debtor. The trial court denied the motion. That ruling is not at issue in this appeal.

counsel for the company or accept service on its behalf because she was not a corporate officer, director, employee, or owner when the complaint was filed.[3]

Solorzano argued the motion should be denied, in the alternative, because Beveridge did not establish a unity of interest and ownership between herself and Makeover Max. She argued he had merely proven that she was a former officer and shareholder of the company—an insufficient basis upon which to find a unity of interest and ownership. She submitted a declaration averring she never comingled funds or used corporate assets as her own. Further, with regard to the deposit slips reflected in her bank records, she contended there was no evidence the deposited funds came from Makeover Max or any of its clients or customers.

On November 17, 2020, Beveridge filed a supplemental brief and evidence to "augment" his pending motion to amend the judgment. He largely repeated the same arguments from his motion. But, for the first time, he argued Solorzano had control of the litigation because she moved (albeit unsuccessfully) to vacate the default and default judgment against Makeover Max.

On December 8, 2020, Solorzano filed a supplemental declaration addressing Beveridge's allegations of commingled funds and personal use of corporate assets. She averred she received biweekly wages ranging from $3,000–$5,000 when she worked for the company, which explained the periodic deposits she received from the company in 2012 and 2013. She also alleged she received income from other sources (specifically, from renting

---

[3]    Rogers died unexpectedly on October 4, 2014. The appellate record and the parties' briefs do not disclose what happened to Roger's corporate shares after his death.

billboard space and selling real estate), which explained the deposits shown on the deposit slips.

On December 11, 2020, the trial court denied Beveridge's motion. The court concluded he failed to establish that Solorzano controlled the underlying litigation between Beveridge and Makeover Max. In particular, it credited Solorzano's averment that she lost her ownership interests and resigned from the company in mid-2013. Further, it found that Solorzano's unsuccessful motion to vacate the default and default judgment against the company, filed on June 26, 2019, did "not support [the claim that] Solorzano had control over the litigation with Makeover Max," which had ended two years earlier with an entry of a default judgment.

The court found that Beveridge did not demonstrate a unity of interest either. Regarding the allegations of commingled funds and personal use of corporate assets, the court noted the periodic payments from Makeover Max to Solorzano occurred while the company still employed her. Further, it noted that Solorzano had an explanation for the recent deposits into her bank account—according to Solorzano, they came from other sources. The court expressly found that Beveridge had made no showing that "these funds came from Makeover Max."

III

DISCUSSION

A. *Legal Principles*

Beveridge moved to amend the judgment under section 187. Section 187 provides: "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this

6

Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."

Under section 187, a court may amend a judgment to add additional judgment debtors and thereby make them liable under the judgment. (*Wolf Metals, Inc. v. Rand Pacific Sales, Inc.* (2016) 4 Cal.App.5th 698, 703 (*Wolf Metals*); *NEC Electronics Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 778 (*NEC*).) "Judgments are often amended to add additional judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor. [Citations.] This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant." (*NEC*, at p. 778.)

To prevail on a motion to add an alter ego as a judgment debtor, a judgment creditor must satisfy three elements: "1) the parties to be added as judgment debtors had control of the underlying litigation and were virtually represented in that proceeding; 2) there is such a unity of interest and ownership that the separate personalities of the entity and the owners no longer exist; and 3) an inequitable result will follow if the acts are treated as those of the entity alone." (*Triyar Hospitality Management, LLC v. WSI (II) – HWP, LLC* (2020) 57 Cal.App.5th 636, 641 (*Triyar*).)

The first element is rooted in due process concerns. A party may be added as a judgment debtor only if she controlled the underlying litigation and was virtually represented in the underlying litigation because due process "guarantees that any person against whom a claim is asserted in a judicial proceeding shall have the opportunity to be heard and to present his defenses." (*Motores de Mexicali, S.A. v. Superior Court* (1958) 51 Cal.2d 172, 176 (*Motores*).) " 'Control of the litigation sufficient to overcome due process objections may consist of a combination of factors, usually including the

7

financing of the litigation, the hiring of attorneys, and control over the course of the litigation.' " (*NEC, supra,* 208 Cal.App.3d at p. 781.) "Without control, considerations of due process preclude the addition of a party after the judgment is a fait accompli." (*Oyakawa v. Gillett* (1992) 8 Cal.App.4th 628, 632 (*Oyakawa*).)

The second and third elements set forth the conditions necessary for a judgment creditor to pierce the corporate veil based on a party's alter ego status. "Under the alter ego doctrine, ... when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons ... actually controlling the corporation, in most instances the equitable owners. [Citations.] The alter ego doctrine prevents individuals ... from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds.' " (*Wolf Metals, supra,* 4 Cal.App.5th at p. 703.)

We review an order on a postjudgment motion to add an alter ego judgment debtor for abuse of discretion. (*Triyar, supra,* 57 Cal.App.5th at p. 640; *Wolf Metals, supra,* 4 Cal.App.5th at p. 703.) To the extent the trial court's exercise of discretion is based on disputed factual findings, we review the court's factual findings for substantial evidence. (*Ibid.*)

B. *Beveridge Did Not Establish That Solorzano Controlled the Underlying Litigation or Had Effective Representation in the Underlying Litigation*

Beveridge appeals the postjudgment order denying his motion to amend the judgment to add Solorzano as an alter ego judgment debtor. The trial court denied the motion after finding that Beveridge did not satisfy either of two necessary requirements—(1) he did not show Solorzano had control of—and was virtually represented in—the underlying litigation between Beveridge and Makeover Max; and (2) he did not show that

8

Solorzano and Makeover Max shared a unity of interest and ownership. In his opening brief, Beveridge challenges the second of these findings, but he presents no arguments concerning the first of these findings.

" 'Courts will ordinarily treat the appellant's failure to raise an issue in his or her opening brief as a waiver of that challenge.' " (*In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 372, fn. 3; see *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*) ["When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration."].) By failing to address the control and virtual representation finding in his opening brief, Beveridge has waived any challenge to that finding. And, because that pivotal finding is unchallenged, Beveridge cannot succeed in this appeal.[4]

Waiver aside, we discern no error in the trial court's finding that Solorzano had no control over—or virtual representation in—the underlying litigation between Beveridge and Makeover Max. Three years before Beveridge sued Makeover Max, Solorzano relinquished her corporate officer positions as well as her ownership in the company. No evidence showed that she maintained any positions as director, officer, employee, or owner of the company at any point during the litigation. There was no evidence that she made any litigation decisions on behalf of the company. Nor was there evidence that she hired or funded attorneys (or had the capacity to hire or

---

[4]     In his reply brief, Beveridge asserts in cursory fashion that Solorzano had control over the underlying litigation. Even if he had made this claim in his opening brief, it would not be meritorious because he has provided no factual analysis, legal authorities, or cogent reasoning to support his perfunctory assertion. "We are not required to examine undeveloped claims or to supply arguments for the litigants." (*Allen, supra*, 234 Cal.App.4th at p. 52.)

fund attorneys) for the company. In fact, no attorney made an appearance for the company, which became a judgment debtor by way of a default judgment.

Given these facts and circumstances, the trial court did not err in finding that Solorzano had no control over, or virtual representation in, the underlying litigation. (See *Motores, supra*, 51 Cal.2d at p. 176 [alleged alter egos could not be added as judgment debtors where they did not participate in the company's defense and the judgment was secured by default]; *Wolf Metals, supra*, 4 Cal.App.5th at pp. 708–709 [alleged alter egos could not be added as judgment debtors where "the judgment against [the company] was entered by default"]; *NEC, supra*, 208 Cal.App.3d at p. 781 [reversing order adding alter ego judgment debtor and finding that "[t]here was no defense for [the alter ego] to control" because the company did not defend itself at trial]; see also *Oyakawa, supra*, 8 Cal.App.4th at p. 632 [wife "had no involvement with and no control over [husband's] defense of [plaintiff's] action. Accordingly, she should not have been added as a judgment debtor."].)

Because Solorzano had no control over the underlying litigation, or virtual representation in that proceeding, it is unnecessary for us to assess whether Solorzano was an alter ego of Makeover Max. (*Hall v. Rite Aid Corp.* (2014) 226 Cal.App.4th 278, 297 [there is a "general rule against resolving issues unnecessary to the disposition of [an] appeal"].)

IV

DISPOSITION

The postjudgment order is affirmed.  Respondent is entitled to her appellate costs.

McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


DO, J.