Filed 11/18/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| BLIZZARD ENERGY, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BERND SCHAEFERS et al., <br><br> Defendants and Appellants. | 2d Civil No. B305774 <br> (Super. Ct. No. 17CVP-0266) <br> (San Luis Obispo County) |

It all started with the idea of turning old tires into fuel through pyrolysis. Whether this will work is not the issue. It did not work for respondent Blizzard Energy, Inc., which invested in a tire pyrolysis project in Kansas. A Kansas jury returned a $3.825 million fraud judgment in favor of respondent and against appellant Bernd Schaefers (Schaefers). We are not in Kansas anymore. The fraud judgment was entered in California. The instant appeal flows from the California trial court's decision to add a judgment debtor pursuant to the "outside reverse veil piercing" doctrine.

Outside reverse veil piercing differs from traditional veil piercing, which is permitted pursuant to the well-known alter ego doctrine. "'The alter ego doctrine prevents individuals or other

corporations from misusing the corporate laws by the device of a sham corporate entity . . . .'" (*Curci Investments, LLC v. Baldwin* (2017) 14 Cal.App.5th 214, 221 (*Curci*).)  In appropriate circumstances, traditional veil piercing permits a party to pierce the corporate or limited liability company (LLC) veil "so that an individual shareholder [or LLC member] may be held personally liable for claims against the corporation [or LLC]." (*Postal Instant Press, Inc. v. Kaswa Corp.* (2008) 162 Cal.App.4th 1510, 1513 (*Postal Instant Press*).)  "Rather than seeking to hold an individual responsible for the acts of an entity, reverse veil piercing seeks to satisfy the debt of an individual through the assets of an entity of which the individual is an insider." (*Curci*, *supra*, at p. 221.)  "Outside reverse veil piercing arises when the request for piercing comes from a third party outside the targeted business entity." (*Ibid*.)

Here, the targeted entity was BKS Cambria, LLC (BKS Cambria).  Schaefers owns a 50 percent interest in the LLC.  Schaefers' wife, Karin Schaefers (wife), owns the other 50 percent.  Neither wife nor BKS Cambria was a defendant in the Kansas action.  The California trial court found that BKS Cambria is Schaefers' alter ego.  Pursuant to the outside reverse veil-piercing doctrine, the court modified the Kansas judgment to add BKS Cambria as a judgment debtor.  Schaefers and BKS Cambria appeal from the order modifying the judgment.[1]

We agree with respondent that the evidence is sufficient to support the trial court's finding that BKS Cambria is Schaefers' alter ego.  But we reverse and remand for further proceedings so

---

[1] BKS Cambria is represented by counsel; Schaefers represents himself.  Each has filed a separate brief.  Schaefers states that he joins in the BKS opening brief.

2

that the trial court may weigh competing equities that bear on the veil-piercing issue. Respondent is entitled to recover the damages awarded by the Kansas judgment, but wife may be an innocent third party who would suffer substantial harm if respondent's recovery is accomplished through the reverse veil piercing of BKS Cambria. Wife has a 50 percent ownership interest in the LLC, but there is no indication that she was involved in the fraud committed against respondent by Schaefers. As we shall explain, she may be an innocent spouse. And she may not be responsible for debts incurred by him after their separation in 1996. (See pp. 18-24, *post*.) On remand, "the court should weigh the competing equities and grant or deny relief depending on the balance of those equities." (*Kapner v. Meadowlark Ranch Assn.* (2004) 116 Cal.App.4th 1182, 1190.)

*Factual and Procedural Background*

Schaefers and wife married in 1981. In March 1996 they signed a separation agreement. In 2001 they formed BKS Cambria and BKS Energy, LLC (BKS Energy), hereafter collectively referred to as "the BKS entities."[2] Both LLCs have two members – Schaefers and wife. Each owns a 50 percent interest in the LLCs. Wife lives in New Jersey. In May 2019, she filed a complaint in New Jersey seeking the dissolution of her marriage to Schaefers.

BKS Cambria owns approximately 34 acres of land in Cambria, California. It allegedly purchased the property for $2 million in 2005. Schaefers is the manager of the LLC. He and his son reside on the property, which has been leased to wireless

---

[2] Appellants note that "BKS stands for Bernd [Schaefers' first name] Karin [wife's first name] Schaefers."

3

carriers for the use of cell phone towers. In 2014 BKS Cambria sold several leases for approximately $2 million.

In September 2017 a Kansas jury awarded respondent damages of $3.825 million in a fraud action against Schaefers and other defendants. In October 2017 the Kansas judgment was entered in California pursuant to the Sister State Money Judgments Act (Code Civ. Proc., § 1710.10 et seq.), hereafter "the Act."[3] In a published opinion, we affirmed an order denying Schaefers' motion to vacate the Kansas judgment. (*Blizzard Energy, Inc. v. Schaefers* (2020) 44 Cal.App.5th 295.)

In June 2019, and pursuant to section 187, respondent moved in the California trial court to amend the Kansas judgment to add the BKS entities "as judgment debtors under the reverse piercing doctrine." Respondent claimed that the BKS entities "are the alter egos of Schaefers and that recognition of the privilege of separate existence would promote injustice."

In July 2019 Schaefers filed a voluntary Chapter 11 bankruptcy petition. In September 2019 the bankruptcy court ordered that the trial court "may hear and decide . . . the Motion to Amend Judgment to add BKS Cambria, LLC and BKS Energy, LLC as Judgment Debtors without violation of the Automatic Stay in this Chapter 11 case."

In February 2020 the trial court granted respondent's motion. It concluded that "the BKS Entities are the alter egos of Schaefers and that failing to add them to the judgment will create an unjust result." The court amended the judgment to add the BKS entities as judgment debtors. Schaefers and BKS Cambria appealed.

_____

[3] Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

4

*Trial Court's Order Modifying Judgment Is*
*Not Void for Lack of Subject Matter Jurisdiction*

In the prior appeal from the order denying Schaefer's motion to vacate entry of the Kansas judgment (B290492), the remittitur issued on April 27, 2020.  More than two months before the issuance of the remittitur, the trial court ordered that BKS Cambria be added as a judgment debtor to the Kansas judgment.  "Generally the filing of a notice of appeal deprives the trial court of jurisdiction of the cause and vests jurisdiction with the appellate court until the reviewing court issues a remittitur." (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1499.)

Appellants contend that, because the order amending the judgment preceded the issuance of the remittitur, the order is void for lack of subject matter jurisdiction.  They rely on the automatic stay of section 916, subdivision (a), which provides, "[T]he perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."  "[S]ection 916 . . . divests the trial court of jurisdiction over the subject matter on appeal—i.e., jurisdiction in its fundamental sense." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 198 (*Delfino*).)[4]

---

[4] "Essentially, the § 916(a) 'stay' means that, upon timely filing of a notice of appeal, . . . [j]urisdiction over the appealed matters *shifts to the court of appeal* and is *terminated in the trial court;* and the trial court's power to *enforce, vacate or modify* the appealed judgment or order is *suspended* while the appeal is pending."  (J. Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 7:2, p. 7-1.)

Section 916 is inapplicable because it applies only to civil actions. Proceedings under the Act are special proceedings, not civil actions. Section 916 is in part 2 of the Code of Civil Procedure. Our Supreme Court "long ago held that Part 2 of the Code of Civil Procedure extends generally only to civil 'actions,' and not to 'special proceedings.'" (*Agricultural Labor Relations Bd. v. Tex-Cal Land Management, Inc.* (1987) 43 Cal.3d 696, 707 (*Tex-Cal*).) Unlike section 916, the Act is in part 3 of the Code of Civil Procedure. Part 3 is entitled, "Of Special Proceedings of a Civil Nature."

That the Act is in Part 3 is not determinative of whether a proceeding under the Act is a special proceeding. (See *Hyundai Securities Co., Ltd. v. Lee* (2013) 215 Cal.App.4th 682, 691-693 (*Hyundai Securities*) [California's Uniform Foreign-Country Money Judgment Recognition Act (§§ 1713–1725) is subject to procedures applicable to actions, not special proceedings, even though it is in Part 3 of the Code of Civil Procedure].) The determinative issue is whether a proceeding under the Act is a civil action.

"The terms 'action' and 'special proceeding' have been distinguished loosely in a number of contexts. However, for purposes of applicability of Part 2 of the Code of Civil Procedure, the definitions are those set forth in Code of Civil Procedure sections 22 and 23." (*Tex-Cal, supra*, 43 Cal.3d at p. 707.) Section 22 provides, "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Section 23 provides, "Every other remedy is a special proceeding." (§ 23.) "As a general rule, a special proceeding is confined to the

6

type of case which was not, under the common law or equity practice, either an action at law or a suit in equity." (*Tide Water Associated Oil Co. v. Superior Court of Los Angeles County* (1955) 43 Cal.2d 815, 822 (*Tide Water*).)

A pre-Act proceeding to enforce a sister state judgment was an action within the meaning of section 22. "Prior to the 1974 enactment of the [Act] . . . , '[t]he exclusive way to enforce a sister state money judgment in California [was] to bring an action on the judgment; when a California judgment [was] obtained, the execution may issue. This traditional manner of enforcing judgments of sister states require[d] all the normal trappings of an original action.'" (*Renoir v. Redstar Corp.* (2004) 123 Cal.App.4th 1145, 1150-1151, bracketed material in original.)

A proceeding under the Act is a speedy alternative to the traditional procedure. It cannot be characterized as an "action at law" under the common law or a "suit in equity" under equity practice. (*Tide Water, supra*, 43 Cal.2d at p. 822.) Unlike the traditional procedure, a party seeking to enforce a sister state judgment under the Act does not file an action. "In California, pursuant to the [Act], in a *special proceeding* '[a] judgment creditor may apply for the entry of a judgment based on a sister state judgment by filing an application pursuant to Section 1710.20.'" (*Conseco Marketing, LLC v. IFA & Ins. Services, Inc.* (2013) 221 Cal.App.4th 831, 838, italics added.) "Upon simple application in conformance with the Act [citations], entry by the clerk of a judgment based upon the application is mandatory (§ 1710.25), constituting a ministerial act of the clerk and not a

7

judicial act of the court [citations]."[5] (*Aspen International Capital Corp. v. Marsch* (1991) 235 Cal.App.3d 1199, 1203 (*Aspen*)).

Thus, in applying for the entry of a sister state money judgment under the Act, the judgment creditor is not "prosecut[ing] another for the declaration, enforcement, or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (§ 22.) No action is filed in the California trial court. The entry of the sister state money judgment is automatic if the judgment creditor's application complies with the requirements of the Act. (§ 1710.25, subd. (a).)

"Where the judgment debtor fails to challenge the matter [by moving to vacate the judgment (§ 1710.30, subd. (a))], the judgment will be entered and the application will have served its purpose, all without any judicial act having been performed by the court." (*Aspen*, *supra*, 235 Cal.App.3d at p. 1203.) Here, appellant moved to vacate the judgment. This required the court to perform a judicial act. The motion did not convert the special proceeding into an "action" within the meaning of section 22. The motion was an authorized step in the special proceeding. (See 16 C.J.S. (Oct. 2021 update) Motions and Orders, § 9, bold omitted ["A motion is not an action, special proceeding, or independent right or remedy but implies the pendency of a suit and is confined to incidental matters arising in it"].)

In contrast to the Act, a person seeking enforcement of a foreign-country money judgment under California's Uniform Foreign-Country Money Judgment Recognition Act (Foreign-

---

[5] Section 1710.25, subdivision (a) provides: "Upon the filing of the application, the clerk shall enter a judgment based upon the application . . . ."

Country Money Judgment Act) must "fil[e] an action seeking recognition of the foreign-country judgment." (§ 1718, subd. (a).) Therefore, even though the Foreign-Country Money Judgment Act is in Part 3 of the Code of Civil Procedure, it is governed by procedures applicable to actions, not special proceedings: "Generally, with respect to special proceedings, the Legislature has set forth specific procedures, but the only procedure specified for recognition of a foreign-country money judgment is that it be raised by filing an action. Thus, . . . we believe the Legislature intended the procedures for actions to be applicable to proceedings to obtain such recognition." (*Hyundai Securities*, *supra*, 215 Cal.App.4th at p. 691.)

Unlike the Foreign Country Money Judgment Act, the Act to enforce sister state money judgments does not require the filing of an action to obtain recognition of the judgment. Accordingly, the legislature did not intend that the procedures for actions be applicable to proceedings to enforce a sister state money judgment under the Act.

"Unless the statutes establishing a 'special proceeding' expressly incorporate the appellate-stay provisions of Part 2, they are inapplicable, and a final order in the 'special proceeding' is not automatically stayed pending appeal." (*Tex-Cal*, *supra*, 43 Cal.3d at p. 707.) "Nothing in [the Act] expressly incorporates [the appellate-stay provisions of] [P]art 2 of the Code of Civil Procedure . . . . Thus, the trial court [order amending the judgment to add an alter ego judgment debtor] is not automatically stayed [by Schaefer's appeal from the denial of his motion to vacate the judgment pursuant to the Act]." (*Veyna v. Orange County Nursery*, *Inc.* (2009) 170 Cal.App.4th 146, 155.) "The rule is clear: there is no automatic stay unless the statute

9

establishing the special proceeding *expressly* incorporates [the stay provisions of] [P]art 2."[6]  (*Ibid.*)

*The Act Does Not Preclude Addition of*
*Nonparty Alter Ego as Judgment Debtor*

Respondent could have brought an action in California to enforce the Kansas judgment.  (§ 1710.60, subd. (a).)  Instead, it applied for entry of the judgment pursuant to the Act. Appellants argue, "Since [respondent] elected to proceed with the summary proceedings [under the Act] of having the clerk enter the sister state judgment, its right to amend the sister state judgment to add a judgment debtor not named in the original sister state judgment was eliminated unless it sought to do so in Kansas."

_____

[6] We need not consider respondent's alternative argument that, because Schaefers failed to post an undertaking to stay enforcement of the judgment pending appeal, "the court had plenary jurisdiction to amend the judgment" to add BKS Cambria as a judgment debtor.  (See *Oyakawa v. Gillett* (1992) 8 Cal.App.4th 628, 630, fn. 2 ["subdivision (a) of section 917.1 . . . provides that '[t]he perfecting of an appeal shall not stay enforcement of the judgment . . . in the trial court if the judgment . . . is for money . . . unless an undertaking is given.' . . .  [N]o undertaking was given and, arguably, the amendment adding a judgment debtor is simply a matter of enforcement"]; but see also *Highland Springs Conference & Training Center v. City of Banning* (2019) 42 Cal.App.5th 416, 425-426 ["Although the EJL [Enforcement of Judgments Law (§ 680.010 et seq.)] does not define 'enforcement' [citation], the EJL nowhere suggests that the filing and pursuit of an alter ego motion to amend a judgment to add an additional judgment debtor, under section 187, constitutes the enforcement of the judgment the movant seeks to amend"].)

We disagree.  Section 1710.35 provides that "a judgment entered pursuant to [the Act] shall have the same effect as an original money judgment of the court . . . ."  "[S]ection 187 authorizes a trial court to amend a judgment to add a judgment debtor who is found to be an alter ego of a corporate defendant." (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1069 (*Misik*).)  The alter-ego doctrine was extended to LLCs by Corporations Code section 17703.04, subdivision (b) ["A member of a limited liability company shall be subject to liability under the common law governing alter ego liability"].

Moreover, the trial court did not, as appellants claim, "amend the sister state judgment to add a judgment debtor not named in the original sister state judgment."  Instead, the court "add[ed] a nonparty alter ego as a judgment debtor.  [Citations.] 'This is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant.'" (*Leek v. Cooper* (2011) 194 Cal.App.4th 399, 419; see also *Butler America, LLC v. Aviation Assurance Co., LLC* (2020) 55 Cal.App.5th 136, 145; *Misik, supra*, 197 Cal.App.4th at p. 1072.)

*A Charging Order Is Not Respondent's Exclusive Remedy*

A judgment against an LLC member may be enforced by the issuance of "a charging order against the transferable interest of the judgment debtor for the unsatisfied amount of the judgment.  A charging order constitutes a lien on a judgment debtor's transferable interest and requires the limited liability company to pay over to the person to which the charging order was issued any distribution that would otherwise be paid to the judgment debtor." (Corp. Code, § 17705.03, subd. (a).)  Appellants claim that "a charging order is the exclusive remedy

11

for [respondent] to enforce its judgment against Appellant Schaefers." Therefore, "the trial court acted in excess of its jurisdiction conferred by the Legislature" when it "add[ed] BKS Cambria as a judgment debtor to the sister state judgment."

A contrary conclusion was reached in *Curci*, *supra*, 14 Cal.App.5th 214. After obtaining a judgment against Baldwin, Curci sought to add Baldwin's LLC as a judgment debtor under the alter ego doctrine. Baldwin argued that a charging order under "Corporations Code section 17705.03 provides the sole remedy available to Curci . . . ." (*Id*. at p. 220.) The court held that section 17705.03 does not preclude reverse veil piercing to add the LLC as a judgment debtor. "[T]he key is whether the ends of justice require disregarding the separate nature of [the LLC] under the circumstances. [Citation.] In making that determination, the trial court should, at minimum, evaluate the same factors as are employed in a traditional veil piercing case, as well as whether Curci has any plain, speedy, and adequate remedy at law." (*Curci*, *supra*, at p. 224.)

Nine years before *Curci*, the same court that decided *Curci* (Fourth District, Division 3) had decided *Postal Instant Press*, *supra*, 162 Cal.App.4th 1510. *Curci* noted that in *Postal Instant Press* it had held, "'[A] third party creditor may not [reverse] pierce the corporate veil to reach corporate assets to satisfy a shareholder's personal liability.'" (*Curci*, *supra*, 14 Cal.App.5th at p. 222.) *Curci* concluded, "[T]he different facts before us, as well as the nature of LLCs, do not present the concerns identified in *Postal Instant Press*." (*Ibid*.)

Appellants contend that *Curci* was wrongly decided. We disagree. There is no reason to depart from its sound analysis.

12

*Appellants Have Not Shown that*
*Respondent Had an Adequate Legal Remedy*

"Amendment of a judgment to add an alter ego is an equitable procedure [citation], and before applying outside reverse piercing, 'the availability of alternative, adequate remedies must be considered by the trial court' [citation]." (*Postal Instant Press*, *supra*, 162 Cal.App.4th at p. 1524.) "'When a less invasive, adequate remedy is available, outside reverse piercing is discouraged.'" (*Id.* at pp. 1523-1524; see also *Curci*, *supra*, 14 Cal.App.5th at p. 223 ["Although legal remedies–e.g., conversion, fraudulent transfer—may be available in many cases, thereby precluding reverse veil piercing, it is precisely the rare situations in which they are not that reverse piercing should deliver justice"].)

Appellants maintain that respondent "had available multiple legal remedies under, among others, the [Act], the CRULLCA [California Revised Uniform Limited Liability Company Act], and the UVTA [Uniform Voidable Transactions Act]." But appellants do not explain how these acts provided an adequate legal remedy. The judgment creditor of a member of an LLC has limited options. Unlike the creditor of a shareholder of a corporation, the creditor of a member of an LLC may not "step straight into the shoes of the debtor. . . . [¶] . . . [T]he creditor may only obtain a charging order against distributions made to the member. (Corp. Code, § 17705.03.) The debtor remains a member of the LLC with all the same rights to manage and control the LLC, including . . . the right to decide when distributions to members are made, if ever." (*Curci*, *supra*, 14 Cal.App.5th 214, 223; see *In re Shapow* (Bankr. C.D. Cal. 2019) 599 B.R. 51, 73, fn. 17 [*Curci* "concluded that outside reverse

13

piercing is permissible in the context of a limited liability company because, unlike a corporation, a limited liability company does not issue shares on which a creditor may levy and creditors do not have sufficient alternative remedies at law"].)

Respondent did not have an adequate legal remedy. Schaefers had filed for bankruptcy protection, and he intended to make it as difficult as possible for respondent to collect on the Kansas judgment. In a letter to his accountant dated August 5, 2018, Schaefers wrote: "[T]he only asset I have at this moment is my 50% interest in the 2 BKS companies [BKS Cambria and BKS Energy]. [¶] . . . In case we lose in the Kansas appeal, the worst thing that can happen [is] that they get a charging order for my interests. . . . [T]hey will get nothing, because the LLCs will not make distributions for a long time and I will stay on as manager and I will then appoint my successor as manager." The trial court found that "that there is in fact evidence of bad faith and attempts to avoid paying this judgment, including the letter to Schaefers' accountant."

*Amendment of Judgment to Add BKS Cambria*
*as Judgment Debtor under Alter Ego Doctrine*

"Under Code of Civil Procedure section 187, 'the trial court has jurisdiction to modify a judgment to add additional judgment debtors.' [Citation.] The decision to modify the judgment is consigned to the trial court's discretion. [Citation.] To the extent the exercise of that discretion relies on factual findings, we review those findings for the existence of substantial evidence." (*Wolf Metals Inc. v. Rand Pacific Sales Inc.* (2016) 4 Cal.App.5th 698, 703.)

"In reviewing a finding of alter ego liability, we must consider whether the trial court's findings are supported

14

by substantial evidence." (*Baize v. Eastridge Companies, LLC* (2006) 142 Cal.App.4th 293, 302.) "'Substantial evidence is evidence that a rational trier of fact could find to be reasonable, credible, and of solid value. We view the evidence in the light most favorable to the [decision] and accept as true all evidence tending to support the [decision], including all facts that reasonably can be deduced from the evidence. . . .'" (*San Diegans for Open Government v. City of San Diego* (2016) 245 Cal.App.4th 736, 740, bracketed material in original.)

"Before the alter ego doctrine will be invoked in California [under traditional veil piercing], two conditions generally must be met. [¶] 'First, there must be such a unity of interest and ownership between the corporation [or LLC] and its equitable owner that the separate personalities of the corporation [or LLC] and the shareholder [or member] do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation [or LLC] alone.'" (*Curci*, *supra*, 14 Cal.App.5th at p. 221.)

<u>First Condition: Unity of Interest and Ownership</u>

As to the first condition – unity of interest and ownership – relevant factors include "'"'[1] [c]ommingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses . . . ; [2] the treatment by an individual of the assets of the corporation as his own . . . ; . . . [[3]] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities . . . .'"'" (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 512-513 (*Greenspan*).) "'No single factor is determinative, and instead a court must examine all the circumstances to determine whether to apply the [alter

15

ego] doctrine. . . . '" (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 812.)

"There is [substantial] evidence of a unity of interest and ownership such that the separate personalities of [BKS Cambria] and [Schaefers] do not exist." (*Triyar Hospitality Management, LLC v. WSI (II) - HWP, LLC* (2020) 57 Cal.App.5th 636, 642.) Schaefers owns 50 percent of the LLC and is its manager. The trial court could reasonably conclude that Schaefers used BKS Cambria's bank accounts as if they were his own personal accounts. Appellants claim that Schaefers "was entitled to approximately $2500 per month as a stipend for managing and taking care of the BKS Property. . . . There is no evidence that he took that salary plus money beyond the salary." We disagree. In June 2014 he wrote a $5,000 check drawn on BKS Cambria's bank account. The check was payable to an attorney retained to respond to a Notice of Deficiency concerning the personal federal income tax return jointly filed by Schaefers and wife. In the same month he wrote four checks transferring $80,000 from BKS Cambria's bank account to his personal bank account. The checks show that their purpose was to fund a loan to Valentin Alexandrov, a co-judgment debtor in the Kansas action. In June 2014 Schaefers wired the funds to Alexandrov. In September 2014 Alexandrov wired the $80,000 back to Schaefers. Schaefers did not return the $80,000 to BKS Cambria. Appellants assert, "The $80,000 was what was left for [Schaefers'] share of the profits" from the sale of "cell leases." If this were true, why on each of the four checks did Schaefers write "Val loan" instead of "distribution of profits?"

Schaefers transferred funds from BKS Cambria to BKS Energy without specifying the reason for the transfer. In

16

February 2014 he wrote two checks totaling $10,000 drawn on BKS Cambria's bank account and payable to BKS Energy. The "memo" portion of both checks simply states "transfer."

Schaefers admitted that he lives rent free on BKS Cambria's property and that he receives "around $1200 per month as a loan from" the LLC. He did not specify the interest rate or repayment schedule for the loan.

The trial court noted that respondent had listed additional "facts" showing that BKS Cambria is Schaefers' alter ego: "Schaefers makes cash withdrawals from the BKS Entities, . . . fails to maintain any documentation for when and why funds are distributed from the BKS Entities, . . . uses BKS Cambria, LLC funds to pay the expenses of other entities,[7] . . . [and] paid attorneys and litigation expenses in . . . the Kansas action . . . from the BKS Entities [even though they were not parties to the Kansas action] . . . ."[8] The court determined that "Schaefers treats the BKS Entities as his own personal property."

---

[7] For example, in October 2015 Schaefers used a BKS Cambria check to pay $6,000 to the Franchise Tax Board on behalf of BKS Energy. In November 2014 he used a BKS Cambria check to pay the property taxes on land owned by CSS Realty Corp., which was owned by Schaefers and wife. In February 2014 he used BKS Cambria funds to pay accounting fees for CSS Realty Corp.; Big Cats, Inc.; BKS Sunset, LLC; and BKS Energy. Big Cats, Inc., was owned by wife and Schaefers' daughter. BKS Sunset, LLC, was owned by Schaefers and wife.

[8] In a declaration under penalty of perjury executed in January 2020, Schaefers admitted "that expenses that I incurred in defending myself in Kansas were paid in part by BKS Cambria on my behalf." In its opening brief BKS Cambria admits that it paid $22,852 of appellant's Kansas litigation expenses. BKS

<u>Second Condition:  Inequitable Result and</u>
<u>Whether Wife is an Innocent Third Party</u>

The trial court concluded that "failing to add [BKS Cambria] to the judgment will create an unjust result." Appellants contend that "an inequitable result will follow if the trial court order [adding BKS Cambria as a judgment debtor] stands" because wife "has a 50% membership interest" in BKS Cambria and the Kansas judgment "is against . . . Schaefers individually," not against wife.

Pursuant to section 387, wife moved to intervene in respondent's motion to amend the judgment.  She claimed that she "is an innocent party who would be inequitably and adversely affected if BKS Cambria . . . [is] brought in as judgment debtor[]."  Wife declared under penalty of perjury that, pursuant to a 1996 "Separation and Property Settlement Agreement," she has "lived apart" from Schaefers since March 1996.  In 2001 she and Schaefers "formed [BKS Cambria] for the purpose of real estate investment and management."  That same year, BKS Cambria purchased an apartment building in Los Angeles.  "All of the money used to purchase the property . . . came from proceeds from the sale of my personal separate property located in New Jersey."  In 2003 or 2004 BKS Cambria sold the apartment building and the proceeds from the sale were used to purchase

_____

Cambria claims that the payment "was merely reimbursement for the $2,500 per month salary [Schaefers] received from BKS Cambria since its inception."  But in his January 2020 declaration Schaefers did not present this justification for the payment.  Schaefers declared that BKS Cambria made the payment "since it was in the interest of the LLC to see that I was properly able to defend myself."  Schaefers did not say that the litigation expenses were paid in lieu of his monthly salary.

the 34-acre property that it presently owns. Wife further declared: "I am 75 years old and retired. . . . [¶] I had no involvement with Bernd Schaefers' business dealings with [respondent]. I only recently became aware of the people involved, the nature of the business, and the underlying lawsuit in this matter."

The trial court denied wife's motion to intervene reasoning her 50 percent membership interest is "presumptively community property" and her claim that it is separate property "is a proceeding within the jurisdiction of the Bankruptcy Court, not this Court." The trial court concluded: "[B]ecause the BKS Entities are community property, and [wife] has not gone to the Bankruptcy Court and established that her membership interests in the BKS Entities are in fact separate property, the Court finds that [wife] lacks sufficient interest in the action to intervene."[9]

---

[9] Wife did not appeal the trial court's order denying her motion to intervene. "'An order denying a motion for leave to intervene is directly appealable because it finally and adversely determines the moving party's right to proceed in the action.'" (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1515.) Because wife did not appeal, we cannot review the trial court's order denying her motion to intervene. (see § 906 ["The provisions of this section do not authorize the reviewing court to review any decision or order from which an appeal might have been taken"]; *Van Sickle*, *supra*, at p. 1515, fn. 14 ["Since the order denying the motion to intervene was separately appealable [and the moving party did not file a timely appeal], we . . . cannot consider here [on appeal from the final judgment] whether the trial court erred in its ruling on that motion"].)

In its subsequent ruling granting respondent's motion to amend the judgment to add the BKS entities as judgment debtors, the court stated, "[I]f [wife's] interest [in the BKS entities] is community property and therefore may be reached to satisfy the judgment, there would be no innocent third party harmed by the reverse veil piercing." The court was apparently relying on Family Code section 910, subdivision (a), which provides, "[T]he community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt."

The trial court continued: "The general presumption is that all property acquired during marriage is community property. (Fam. Code, § 760.) Schaefers has produced a Separation Agreement entered into over 20 years ago showing that [he and wife] intended to keep their property separate, however [respondent] has shown that Schaefers and his wife have, in recent years, treated the BKS Entities as disregarded entities and community property for tax purposes (IRS Revenue Procedure 2002-69), which is inconsistent with sentiments set forth in the 20 year old Separation Agreement. . . . [¶] Schaefers has failed to explain or rebut the treatment of the BKS Entities on the tax returns, or establish that the characterization of the BKS Entities in the returns is consistent with an intent to treat them as the separate property of Schaefers and his wife."

The tax returns referred to by the trial court are California Limited Liability Company Return of Income forms (Form 568) filed by BKS Cambria for the tax years 2013 through 2017. The forms show that the LLC was disregarded for federal tax

purposes and that Schaefers was the sole member of the LLC. BKS Cambria would qualify as a disregarded entity only if it were wholly owned by Schaefers and wife as community property. "[I]f spouses file joint income tax returns, . . . LLCs owned *entirely* as community property are disregarded for federal income tax purposes. Thus, the . . . LLC would not be required to file separate [federal] income tax returns[, i.e., separate from the spouses' joint federal income tax returns]. In contrast, if the . . . LLC is owned as separate property, the . . . LLC would not be a disregarded entity and would be required to file separate [federal] income tax returns." (Ware & Orr, *Oh, What a Relief It Is: Curing Estate Plans That No Longer Make Sense in Light of the American Taxpayer Relief Act of 2012*, 2016 ABATAX-CLE 0506048, italics added.)

The trial court erroneously assumed that wife is bound by BKS Cambria's filing of California tax returns stating that it is a disregarded entity. Only Schaefers' name appears on the tax returns, which were prepared by BKS Cambria's accountant. Schaefers was the manager of the LLC. Respondent has not referred us to evidence in the record showing that wife reviewed the LLC's tax returns before they were filed or that she understood the significance of the designation of the LLC as a disregarded entity. The tax returns answer "yes" to the question, "[I]s this LLC a business entity disregarded for tax purposes?" The returns do not explain that an LLC owned by a husband and wife qualifies as a disregarded entity only if it is wholly owned as community property.

Furthermore, the trial court erred in invoking "[t]he general presumption . . . that all property acquired during marriage is community property. (Fam. Code, § 760.)" Wife

21

acquired her 50 percent interest in BKS Cambria years after her March 1996 separation from Schaefers. Family Code section 771 provides, "The earnings and accumulations of a spouse . . . after the date of separation of the spouses, are the separate property of the spouse." "The term accumulation 'applies "to any property which a person acquires or retains" except for property obtained in exchange for community property or community funds.'" (*In re Marriage of Stephenson* (1984) 162 Cal.App.3d 1057, 1085.) Wife declared that the funds used to purchase BKS Cambria's real property "came from proceeds from the sale" of her separate property in New Jersey.

Even if wife's membership interest in BKS Cambria were community property, this would not necessarily mean that her interest would be liable for Schaefers' judgment debt to respondent. The summary of the facts in the Kansas Court of Appeals' opinion shows that respondent's fraud action was based on Schaefers' conduct beginning in 2011, 15 years after the spouses had separated. Family Code section 910, subdivision (a) provides, "[T]he community estate is liable for a debt incurred by either spouse before or during the marriage . . . ." But the community's liability "does *not include* [a debt incurred during] 'the period after the date of separation . . . and before a judgment of dissolution of marriage or legal separation of the parties.' [Fam.C. § 910(b)] [¶] Thus, debts incurred by either spouse *after separation* are the debtor spouse's *separate obligation*, neither chargeable against nor reimbursable from the community estate. [Citations.]" (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group June 2021 update) ch. 8-D, ¶ 8:746.) "In the case of a tort, [a debt is incurred] at the time the tort occurs."

22

(Fam. Code, § 903, subd. (b).) The fraud tort in the Kansas action occurred no earlier than 2011.

Thus, the trial court's determination that it would be inequitable not to add BKS Cambria as a judgment debtor was based in part on mistakes of law and findings unsupported by the record. The court concluded that wife is not an innocent third party who would be harmed by reverse veil piercing because her membership interest in the LLC is presumptively community property and the LLC's California tax returns manifested wife's intent to treat her 50 percent interest as community property. But the presumption of community property is inapplicable. If wife's interest in the LLC were community property, her interest would not be liable for Schaefer's debt to respondent because the debt was incurred long after the date of separation. Moreover, the court failed to consider that wife may not have been aware of the significance of the tax returns' designation of BKS Cambria as a disregarded entity. The trial court's legal mistakes and unsupported factual findings irretrievably flaw its ruling.

As to whether the reverse veil piercing would be inequitable to wife, *Curci*, *supra*, 14 Cal.App.5th 214, is distinguishable. (See the discussion of *Curci* at page 12, *ante*.) *Curci* observed: "Baldwin, the judgment debtor, holds a 99 percent interest in [the LLC]. His wife holds the remaining 1 percent interest, but she is also liable for the debt owed to Curci. (See Family Code, § 910 [community estate generally liable for debt incurred by either spouse before or during marriage].) There simply is no 'innocent' member of [the LLC] that could be affected by reverse piercing here." (*Id*. at p. 222, second bracketed material in original.) In contrast to *Curci*, in the

23

present case there may be an innocent member (wife) of BKS Cambria who would be adversely affected by reverse piercing.

"The essence of the alter ego doctrine is that justice be done. 'What the formula comes down to . . . is that liability is imposed to reach an equitable result.' [Citation.] Thus the corporate form will be disregarded . . . only when the ends of justice so require." (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 301; see also *Estate of Bielec* (1972) 8 Cal.3d 213, 219, fn. 5 ["We may look through a corporation to its *alter ego* if the preservation of the corporate fiction of a distinct entity would have an inequitable result or promote injustice"].)

We must remand the matter to the trial court for further proceedings on the equitable issue consistent with the views expressed in this opinion. We do not suggest that wife is, or is not, an innocent third party. Nor do we suggest that the court should deny respondent's motion if on remand it finds that wife is an innocent third party who would be harmed by the addition of BKS Cambria as a judgment debtor. Whether the motion should be granted or denied is within the trial court's sound discretion. The court must "weigh the equities to ""accomplish ultimate justice.""" (*Hartford Casualty Ins. Co. v. Travelers Indemnity Co.* (2003) 110 Cal.App.4th 710, 724.)

*Alleged Violation of Due Process*

Appellants argue: "BKS Cambria was denied its due process rights because its property was taken away without an opportunity to be heard in the Kansas action." (Bold and capitalization omitted.) The argument is forfeited because appellants failed to raise it below. (*Fourth La Costa Condo. Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 585.)

24

The argument is also forfeited because it is not supported by meaningful analysis with citation to authority. (*Gunn v. Mariners Church, Inc.* (2008) 167 Cal.App.4th 206, 217-218.) The argument is set forth in a single paragraph at page 71 of BKS Cambria's opening brief. The paragraph contains the following conclusionary statement: "The ultimate effect of the trial court's order . . . is to strip BKS Cambria of its significant real property holdings without due process of the law as required by the due process clauses of the United States and California Constitutions *for all the reasons stated above in its previous arguments*." (Italics added.) There are no citations to the "previous arguments." BKS Cambria cannot expect us to search through its brief in an attempt to find these arguments.

Respondent states, "The crux of Appellants' [due process argument] is that the trial court's order is erroneous because BKS [Cambria] did not control the Kansas litigation that led to the judgment against Schaefers." The argument lacks merit because under the alter ego doctrine "the original party [Schaefers] and the new party [BKS Cambria] were one and the same. Adding the alter ego entity after judgment, therefore, amounted to little more than correcting a misnomer in naming the defendant." (*Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1420; see also *Greenspan, supra,* 191 Cal.App.4th at p. 509 ["Simply put, section 187 [authorizing amendment to add alter ego as judgment debtor] recognizes 'the inherent authority of a court to make its records speak the truth'"].)

Respondent asserts, "Schaefers also appears to contend that his due process rights were violated because the court did not hold a full evidentiary hearing on the motion to amend the

25

judgment." This contention is also without merit. "Code of Civil Procedure section 187 contemplates a noticed motion. The trial court is not required to hold an evidentiary hearing. [Citation.] Evidence in the form of declarations or deposition testimony is sufficient." (*Wells Fargo Bank, N.A. v. Weinberg* (2014) 227 Cal.App.4th 1, 9.)

*Choice of Law*

Kansas Law

Appellants claim that, instead of applying California law, the trial court should have applied "Kansas law . . . which does not recognize the outside reverse veil piercing doctrine." In support of their claim that a conflict exists between Kansas and California law, appellants cite only one case: *Floyd v. IRS* (10th Cir. 1998) 151 F.3d 1295. There, the federal court was asked to determine whether reverse veil piercing should be applied to a Kansas corporation, not an LLC. The federal court noted that Kansas courts had not considered whether to permit reverse veil piercing of a corporation. (*Id.* at p. 1300.) The federal court concluded, "[I]n the absence of a clear statement of Kansas law by the Kansas courts, we will not assume that such a potentially problematic doctrine [reverse veil piercing of a corporation] already has application in that state." (*Ibid.*)

The parties have not cited, and we have not found, any Kansas case, published or unpublished, that discusses whether reverse veil piercing of an LLC is permissible under the alter ego doctrine. Accordingly, as to this issue there is a false conflict between California and Kansas law. "[I]f the laws and interests of the concerned states are not in conflict, the result is deemed a 'false conflict' or no conflict at all. The court need not engage in any choice-of-law analysis where no conflict is established

26

between laws of the states that are potentially applicable. . . . [¶] . . . [¶] . . . In a false-conflicts situation, the law of the forum jurisdiction will usually govern." (15A C.J.S. (June 2021 update) False Conflicts, § 31, fns. omitted; see also *Pereira v. Thompson* (2009) 230 Ore.App. 640, 670, fn. 6 ["our two-step process for determining what law applies in a case first requires us to determine whether there is a material difference between the substantive laws at issue; if there is no difference, it is a 'false conflict' and Oregon law governs"].)

Because there is a false conflict between California and Kansas law, California law applies. *Curci*, *supra*, 14 Cal.App.5th 214, permits reverse veil piercing of an LLC.

New Jersey Law

In May 2019 wife filed in New Jersey a "Complaint for Divorce/Dissolution." Appellants argue that, in determining the nature of wife's 50 percent interest in BKS Cambria, the trial court should have applied New Jersey law because "the divorce proceedings are in New Jersey where [wife] lives and where Appellant Schaefers has conceded jurisdiction." Since New Jersey "is a non-community property state," wife "would be significantly damaged by applying the alter ego doctrine and thus the motion to amend should have been denied."

Appellants' argument is forfeited because they do not explain why the mere filing by wife of divorce proceedings in New Jersey required the California trial court to apply New Jersey law. BKS Cambria is a California LLC that does business and owns property in California, not New Jersey, and Schaefers is a resident of California. "It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority. [Citations.] When[, as here,

meaningful] legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited . . . ." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)

In any event, there is no merit to appellants' argument that New Jersey law on the division of property should prevail. Wife's complaint for divorce requested only dissolution of the marriage. It did not request division of the parties' property. Schaefers signed a consent to entry of a judgment of divorce in which he stated, "The Plaintiff and I are not seeking Equitable Distribution of property and/or assets . . . ."

*Arguments Personally Made by Schaefers Alone*

Schaefers has filed his own opening brief in which he makes additional arguments. He contends that, pursuant to Evidence Code section 352, the trial court abused its discretion by permitting the admission of inflammatory, unduly prejudicial evidence. The contention is forfeited for failure to show that he objected on Evidence Code section 352 grounds in the trial court. (*People v. Valdez* (2012) 55 Cal.4th 82, 138-139.) If the contention were not forfeited, Schaefers would not prevail because he fails to establish an abuse of discretion or a miscarriage of justice.

Schaefers claims that the trial court required him to disclose privileged income tax returns and that it erroneously relied upon them. The claims are forfeited because they are not supported by meaningful argument with citations to the record and authority. (*Allen, supra,* 234 Cal.App.4th at p. 52; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)

Finally, Schaefers maintains that the trial court ignored patents that, "[i]f professionally pursued, . . . could be worth tens

of millions of dollars . . . ."  He alleges that respondent has "**unclean hands** by patenting intellectual property belonging to Appellant Schaefers and hiding the fact from Appellant Schaefers, the Kansas judge and the jury in the Kansas proceedings."  This argument is also forfeited.  We do not consider the underlying Kansas proceedings.  In addition, this argument is not supported by meaningful analysis with citations to the record and authority.

*Disposition*

The order modifying the judgment by adding BKS Cambria as a judgment debtor is reversed.  The matter is remanded to the trial court with directions to conduct a noticed hearing on whether it would be inequitable to add BKS Cambria as a judgment debtor because of wife's 50 percent membership interest in the LLC.  The court may receive additional evidence on this issue.  It shall reconsider the issue in light of the views expressed in this opinion, weigh the equities, and determine whether to grant or deny respondent's motion.  We offer no opinion on how the trial court should rule.  The parties shall bear their own costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

TANGEMAN, J.

29

Linda D. Hurst, Judge

Superior Court County of San Luis Obispo

_____

Bernd Schaefers, in propria persona, for Defendant and Appellant.

Tardiff Law Offices and Neil S. Tardiff, for Defendant and Appellant, BKS Cambria.

Rogers, Sheffield & Campbell, John H. Haan, Jr., Nathan C. Rogers, for Plaintiff and Respondent.