Filed 3/10/22  Meditech Laboratories v. LSCD4635 CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MEDITECH LABORATORIES, INC., | B306218 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC576721) |
| v. | |
| LSCD4635, INC., | |
| Defendant and Respondent; | |
| BUSINESS SERVICES OF AMERICA, INC., | |
| Objector and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Edward B. Moreton, Jr., Judge.  Affirmed.

Shulman Bastian Friedman & Bui and Shane M. Biornstad for Objector and Appellant.

Dumas & Kim, James A. Dumas and Christian T. Kim for Defendant and Respondent.

_____

After defendant and respondent LSCD4635, Inc. (LSCD or the judgment creditor) obtained a judgment in its favor and against Meditech Laboratories, Inc. (Meditech), it moved to amend the judgment pursuant to Code of Civil Procedure section 187[1] to add appellant Business Services of America, Inc. (BSA or the judgment debtor) as a judgment debtor. The trial court granted LSCD's motion. In so doing, it overruled all of BSA's evidentiary objections to LSCD's evidence pursuant to California Rules of Court, rule 3.1354(c) (rule 3.1354). BSA appeals, arguing that the trial court committed prejudicial error in overruling its evidentiary objections.

We agree with BSA that the trial court erred in relying upon rule 3.1354 when it overruled BSA's objections to evidence. But, BSA has not demonstrated on appeal that this error was prejudicial. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*LSCD obtains a judgment against Meditech*

Meditech and LSCD entered into a services agreement and later brought claims against each other for breach of contract. They eventually arbitrated their claims, and on July 6, 2018, the arbitrator issued an interim award in favor of LSCD. The corrected final award was issued on October 1, 2018.[2] On

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] Notably, the arbitrator found LSCD's president, Stephen Cobos (Cobos), "clear, direct, consistent and knowledgeable about the events at issue." But it found Meditech's manager, Quoc Daniel Huan Ha (Ha), "evasive" and unclear; his evasive testimony "seriously eroded his credibility."

January 29, 2019, the trial court confirmed the arbitrator's award and entered judgment in favor of LSCD and against Meditech in the amount of $2,520,464.40.

*LSCD's motion to amend the judgment*

On November 18, 2019, LSCD filed a motion to amend the judgment to add BSA as a judgment debtor. LSCD argued that BSA is an alter ego of Meditech under a single enterprise theory. In support, LSCD offered the following evidence: (1) a declaration from its president, Cobos; (2) a declaration from counsel with 37 attached exhibits; (3) an expert declaration; (4) a request for judicial notice of 30 exhibits; (5) excerpts from the prejudgment deposition of Meditech's principal, Kim Tran Ha (Tran); (6) excerpts from the prejudgment deposition of the judgment debtor's president and Tran's husband, Ha; and (7) excerpts from the judgment debtor examination of Meditech, for which Ha testified.

A. Cobos Declaration

As is relevant to the issues in this appeal, Cobos declared that throughout his dealings with Meditech, his "only contact was with Ha." Once this litigation commenced, he "encountered [Tran] at her deposition but she didn't even attend the arbitration hearing. The only person who attended the arbitration on the Meditech side, aside from the Meditech attorney, was [Ha], who was there every day."

B. Tran's Prejudgment Deposition Testimony

In her prejudgment deposition, Tran testified that she was the owner/president/director of Meditech. When asked who helped her produce the requested documents for her deposition, she replied that Ha had helped her because "he's the management company that helps me with most business that

3

dealt with Meditech," and the management company is BSA. She explained that BSA manages Meditech by doing "[p]retty much everything from accounting, payroll, . . . [hiring], . . . [d]ay-to-day business, administration, [and] compliance." Tran further testified that she thought Meditech had a lease for a building in Laguna Hills, but she was not sure. That building is the same building where BSA is located.

Although she was the president of Meditech, Tran did not seem to know a lot about its business. For example, when asked about an individual on the "management team," Tran did not know if she was employed by Meditech. While she had to approve payroll, she did not necessarily see the names of her employees. "Ha pretty much advised me on the profits and loss." Later, when asked about depositing checks, she replied: "To be honest with you, I don't know. BSA takes care of all this, so I don't know what the logistics of how this whole thing works. You could ask [Ha] about that."

She also testified about an agreement between Meditech and BSA concerning duplicate checks. But, she did not know what "their" agreement was. When asked who the parties to that agreement were, she replied Ha and Cobos. According to Tran, even though Ha was not a Meditech employee, he could enter into an agreement on its behalf because he "advised" her, he was "the management team," and he was "the one who brought this business on. So he's the one who pretty much negotiated the deals and whatnot for me." In other words, if LSCD had questions about the protocol concerning duplicate checks, it needed to ask Ha.

Regarding discovery responses, she indicated that Ha had helped her prepare them.

4

C. Ha's Prejudgment Deposition Testimony

Ha testified that he was a director of BSA. As director, he was "the president who run[s] the day-to-day work of BSA. And BSA does a lot of different things, from human resources to leave of compliance, to marketing, et cetera, et cetera." BSA manages Meditech.

When asked to provide an estimate of how Meditech was allegedly damaged by LSCD, Ha stated that he did not know and that he doubted Tran would know either. But part of Meditech's alleged damages included a loan it allegedly was forced to get because LSCD owed it money. According to Ha, White Star Investment Universal Limited (of which Ha had at some point been a director or manager) loaned Meditech $400,000 pursuant to an oral agreement negotiated by Ha on behalf of Meditech through BSA.

D. Exhibits Attached to Counsel's Declaration

Attached to LSCD's counsel's declaration were a host of documents. As pertains to the issues in this appeal, one document was a copy of the lease between QK Ha Family Limited Partnership and Meditech. Ha executed the lease on behalf of the lessor, and Tran executed the lease on behalf of Meditech. Also attached was a copy of a promissory note issued by Meditech for the benefit of the QK Ha Family Limited Partnership after the arbitration award had been issued against it.

E. Request for Judicial Notice

One document attached to LSCD's request for judicial notice is a UCC filing acknowledgement from the California Secretary of State dated August 15, 2018 (after the interim arbitration award was issued) identifying Meditech as the debtor and BSA as the secured party. Another document was a UCC

5

financing statement, also filed in August 2018, identifying Meditech as the debtor and White Star Investment Universal Limited as the secured party.

*BSA's opposition*

BSA opposed the motion to amend the judgment. In support, it filed declarations from Ha, his wife and the principal of Meditech Tran, and Meditech's accountant, Pazhanganattu B. Asokan (Asokan). It also filed numerous evidentiary objections to much of LSCD's evidence. Specifically, it filed 15 compound evidentiary objections to Cobos's nine paragraph declaration; 52 compound evidentiary objections to LSCD's counsel's declaration and attached exhibits; 14 compound objections to the expert declaration; general and specific compound objections to the excerpts from Ha's deposition; general and specific compound objections to the excerpts from Ha's deposition; general and specific compound objections to the excerpts from the judgment debtor examination; and 29 objections to LSCD's 30 exhibits attached to its request for judicial notice.

    A. Ha's Declaration

Ha averred that BSA had a management services agreement with Meditech; thus, BSA had access to all of Meditech's business records. But, BSA did not have any legal or equitable ownership interest in Meditech. "Meditech simply paid BSA for the management and administrative services it provided to Meditech." "None of Meditech's employees were employed by BSA and none of Meditech's employees did work for BSA," and the companies maintain separate payroll. "BSA's revenue is not currently derived from any ongoing operations of Meditech . . . . BSA's revenues came and come from companies other than and in addition to Meditech." BSA and Meditech complied with

6

corporate formalities; they never commingled funds, and BSA never diverted any funds from Meditech.

According to Ha, "BSA's management fees were reasonable and its management services were of great worth to Meditech."

Ha also testified about Meditech's lease. He stated that Meditech leased property from the QK Ha Family Limited Partnership; it subleased a portion of the property to BSA. When Meditech defaulted on the lease, the QK Ha Family Limited Partnership "tried to secure the debt by way of a Secured Promissory Note, a Security Agreement and UCC filings."

B. Tran's Declaration

Tran attested that BSA provides business management and administrative services to Meditech. But, "BSA has never controlled [her] ability to make any business decisions for Meditech." She agreed with Ha that "Meditech greatly valued BSA's management and administrative services and believed that the fees paid to BSA were reasonable." And, like Ha, she averred that BSA and Meditech have always been separate entities.

In her declaration, Tran provided detailed information concerning Meditech's lease of property in the same building as BSA. She confirmed that Meditech leased property from the QK Ha Family Limited Partnership.

C. Asokan's Declaration

Asokan, an accountant at BSA, declared that he had "access to all of Meditech's business and accounting records, including memoranda, reports and records of acts, events and transactions made in the regular course of Meditech's business at or near the time of the act, event or transaction." He also stated that Meditech leased office space from the QK Ha Family Limited

7

Partnership, and that Meditech subleased some of the office space to BSA.

*Trial court order*

After entertaining oral argument, the trial court granted the judgment creditor's motion to amend the judgment, finding "the three factors for alter-ego liability" met. Specifically, it found: "Based on the evidence presented, the factors preponderate in [the judgment creditor's] favor. (1) There appears to be identical equitable ownership, control, and management in the two entities by [Ha]; (2) They use the same office or business location, or at least have a lease agreement for the same location and Ha is essentially the manager of both entities as Tran has testified that he manages Meditech and is her employee; (3) Meditech is undercapitalized and has recorded UCC Finance Statements for its assets; (4) There is concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities by both Ha and Tran as they provide evasive responses at their depositions and are not able to keep track of all their businesses and/or business dealings; (5) The entities disregard legal formalities and fail to maintain arm's length relationships among related entities by the rent decrease, unjustified management costs, unexplained irregular payments, inconsistent representation of who the secretary and treasurer is for BSA, and the unexplained promissory notes after the interim arbitration award issued; (6) The diversion of assets from Meditech based on the belated promissory notes to the detriment of creditors, and the manipulation of assets and liabilities between entities so as to concentrate the assets in [the judgment

8

debtor] and the liabilities in Meditech based on the unexplained fees, rent payments, and promissory notes."

It further found BSA's evidence inadequate as it "relie[d] on self-serving declarations" and did not explain financial transactions that occurred after the arbitration award was issued in the judgment creditor's favor. Moreover, "the inconsistent and evasive testimony [of Tran and/or Ha] shows a disregard for legal formalities and BSA appeared to have control of the litigation as it was apparently managing almost all aspects of Meditech at the time and Ha was present for the arbitration. Tran's testimony also shows a lack of knowledge of her business and its dealings and relies on BSA's and Ha's management. . . . There appears to be minimal separation between Ha's work for BSA and Ha's work for Meditech."

In so ruling, the trial court overruled all of BSA's evidentiary objections on the grounds that it "failed to file objections in the proper format in compliance with California Rules of Court, rule 3.1354(c)."

*Judgment and appeal*

On April 8, 2020, the trial court entered an amended judgment adding BSA as a judgment debtor.

BSA's timely appeal ensued.

**DISCUSSION**

I. *Standard of review*

As the parties agree, we review the question of whether the trial court erroneously relied upon rule 3.1354(c) in overruling all of the judgment debtor's evidentiary objections de novo. "Where error is shown, this court may not set aside the order unless the error prejudiced the appellant." (*EHM Productions, Inc. v. Starline Tours of Hollywood, Inc.* (2018) 21 Cal.App.5th 1058,

9

1063; § 475.)  "Claims of evidentiary error under California law are reviewed for prejudice applying the 'miscarriage of justice' or 'reasonably probable' harmless error standard of *People v. Watson* (1956) 46 Cal.2d 818, 836 that is embodied in article VI, section 13 of the California Constitution.  Under the *Watson* harmless error standard, it is the burden of appellants to show that it is reasonably probable that they would have received a more favorable result at trial had the error not occurred.  [Citations.]" (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447.)

II.  *The trial court erroneously overruled BSA's evidentiary objections pursuant to rule 3.1354(c)*

As set forth above, the trial court issued a blanket ruling, overruling all of BSA's evidentiary objections pursuant to rule 3.1354(c).  This was error.  As BSA correctly argues on appeal, and as LSCD concedes, rule 3.1354 only applies to motions for summary judgment and adjudication, and the instant motion to amend the judgment does not fall within the scope of the rule.

III.  *The error was not prejudicial*

Having found that the trial court erred, the next question is whether the judgment debtor has demonstrated that that error compels reversal.  After all, "'an erroneous evidentiary ruling requires reversal only if "there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error.  [Citation.]"'  [Citations.]" (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 857–858.)

A.  <u>Deposition transcripts are not inadmissible hearsay</u>

According to the judgment debtor, deposition transcripts are categorically inadmissible hearsay unless some exception

10

applies;[3] thus, the transcripts from Ha and Tran's depositions in the arbitration proceeding and Meditech's judgment debtor examination are inadmissible. We disagree. Section 187 "contemplates a noticed motion. The trial court is not required to hold an evidentiary hearing. [Citation.] Evidence in the form of declarations or deposition testimony is sufficient." (*Wells Fargo Bank, N.A. v. Weinberg* (2014) 227 Cal.App.4th 1, 9; see also § 2025.620 [at any hearing in the action, "any part or all of a deposition may be used against any party who was present or represented at the taking of the deposition, or who had due notice of the deposition and did not serve a valid objection under Section 2025.410, so far as admissible under the rules of evidence applied as though the deponent were then present and testifying as a witness"].)

*Gatton v. A.P. Green Services, Inc.* (1998) 64 Cal.App.4th 688, 692–693, disapproved by *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 944, fn. 8, *L&B Real Estate v. Superior Court* (1998) 67 Cal.App.4th 1342, 1346–1348, disapproved by *Sweetwater Union High School Dist. v. Gilbane Building Co., supra*, at p. 944, fn. 8, and Evidence Code section 1292, cited by the judgment debtor, do not compel a different result. Those cases and that statute stand for the proposition that deposition testimony from prior proceedings are inadmissible hearsay unless the proponent of that testimony establishes that a hearsay exception applies. (Evid. Code, § 1290.) That is not the situation in the instant case, where the

---

[3]    The judgment creditor agrees that at least some, if not all, of the deposition testimony constitutes hearsay.

11

subject deposition testimony is considered in lieu of in-person testimony.

Even if the deposition testimony were hearsay, all of the deposition testimony would still be admissible as party or authorized admissions. (Evid. Code, § 1222; *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 524 [hearsay rule does not exclude admissions made by an agent of a party when the agent's powers are broad enough to constitute him the general representative with broad managerial responsibilities].) Tran certainly is a party representative; she is the director of Meditech. And both Tran and Ha testified that Ha, albeit through BSA, had broad managerial responsibilities for Meditech.

In addition, Tran's deposition testimony would be admitted pursuant to Evidence Code section 1235. That statute provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." That is exactly the situation in this case. For example, in opposition to LSCD's motion to amend the judgment, Tran asserted she never held any interest in BSA, that Ha never had any control of Meditech's ownership, that she never directed Meditech to divert its assets to Ha, and that all transactions involving the judgment debtor and Meditech were performed at arm's length. That evidence conflicts with her deposition testimony that she did not know anything about Ha's business. Similarly, in her declaration, Tran defended Meditech's lease of the property from the QK Ha Family Limited Partnership, but at her deposition, she stated that she did not know why there was a lease or even if there had been a lease at all.

12

B. Cobos declaration

The judgment debtor lodged many objections to Cobos's declaration. But, as the judgment debtor concedes, the trial court "apparently relied" only on statements of which he "could have had personal knowledge," including the judgment creditor's dealings with only Ha as opposed to Tran or others at Meditech and the fact that Tran did not attend the arbitration but Ha did. Because the trial court only relied upon admissible statements in Cobos's declaration, it is irrelevant whether the trial court should have sustained BSA's objections to other portions of that declaration.

C. LSCD's counsel's declaration

BSA asserts that the documents attached to LSCD's counsel are inadmissible. Specifically, it points to (1) the lease between the QK Ha Family Limited Partnership and Meditech, and (2) a copy of the promissory note referenced in Ha's declaration. "As is routine in law and motion practice," a party's exhibits may be "authenticated through declarations submitted by . . . attorneys, who had personal knowledge of how [those exhibits were obtained], how they had been identified, who had identified them, and their status as true and correct copies of the 'originals.'" (*Greenspan v. LADT LLC, supra,* 191 Cal.App.4th at p. 523.) That is exactly what occurred here. LSCD's counsel who attended Ha's deposition executed the declaration to which the exhibits are attached. Ha testified that he had a supervisory role in producing the documents requested by LSCD before the deposition. Those documents included the subject lease.

BSA further argues that the lease and promissory note constituted inadmissible hearsay. We disagree. Evidence Code section 1200, subdivision (a) defines hearsay evidence as

13

"evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated."  Here, the documents were not being offered to prove the truth of the matter asserted (that the contents of the lease and promissory note are true).  Rather, they were being offered as evidence of their existence—there was a lease and a promissory note between these entities.  (*Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 316 ["Documents not offered for the truth of the matter asserted are, by definition, not hearsay"]; *Remington Invs. v. Hamedani* (1997) 55 Cal.App.4th 1033, 1038–1039 [note ledger was inadmissible to prove the truth of its contents, namely the amount owed by the defendant to the plaintiff]; *People v. Smith* (2009) 179 Cal.App.4th 986, 1003 [prosecutor could not introduce information written on agreements to prove that the defendant violated the law].)

Assuming without deciding that BSA is correct, the documents would still be admissible as business records pursuant to Evidence Code section 1271.  That statute provides:  "Evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition, or event if:  [¶]  (a) The writing was made in the regular course of a business;  [¶]  (b) The writing was made at or near the time of the act, condition, or event;  [¶]  (c) The custodian or other qualified witness testifies to its identity and the mode of its preparation; and  [¶]  (d) The sources of information and method and time of preparation were such as to indicate its trustworthiness."  Taken together, the declarations of Tran, Ha, and Asokan confirm that the lease and the promissory note are admissible business records.

14

In their declarations filed in opposition to the judgment creditor's motion, Tran and Ha provided detailed information concerning Meditech's lease of property in the same building as BSA. They confirm that Meditech leased the property from the QK Ha Family Limited Partnership. Separately, Ha averred that after Meditech defaulted on the lease (and after the arbitrator's interim award), the QK Ha Family Limited Partnership tried to secure the debt with a promissory note. Furthermore, Asokan testified that he had access to Meditech's business records, including "records of acts, events and transactions made in the regular course of Meditech's business at or near the time of the act, event or transaction." He goes on to aver that Meditech leased property from the QK Ha Family Limited Partnership, the same property as where BSA rented space.

D. Request for judicial notice

BSA contends that the trial court could not take judicial notice of the UCC-1 filing. We disagree. Evidence Code section 452, subdivision (h), allows a court to take judicial notice of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." The UCC filing falls squarely within the scope of this statute. It is indisputable that a UCC-1 was filed after judgment in this case was entered, identifying Meditech as the debtor. (See also *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 113 ["Although the *existence* of a document may be judicially noticeable, the truth of statements contained in the document and its proper interpretation are not subject to judicial notice if those matters are reasonably disputable"].)

15

IV. *Substantial evidence supports the trial court's finding that the judgment debtor is the alter ego of Meditech*

A. Relevant law

Section 187 authorizes a trial court to amend a judgment to add judgment debtors. (*NEC Electronics Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 778.) "[T]he general rule is that 'a court may amend its judgment at any time so that the judgment will properly designate the real defendants.' [Citation.]" (*Dow Jones Co. v. Avenel* (1984) 151 Cal.App.3d 144, 149.) "In order to see that justice is done, great liberality is encouraged in the allowance of amendments brought pursuant to Code of Civil Procedure section 187." (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1073.)

Section 187 and the alter ego doctrine often go hand-in-hand. "The authority of a court to amend a judgment to add a nonparty alter ego as a judgment debtor has long been recognized." (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1106.) "Judgments are often amended to add additional judgment debtors on the grounds that a person or entity is the alter ego of the original judgment debtor." (*NEC Electronics Inc. v. Hurt, supra,* 208 Cal.App.3d at p. 778.)

The alter ego doctrine traditionally "arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 (*Mesler*).) There is "no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case." (*Ibid*.) There are "two general requirements: '(1) that there be such unity of

16

interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.' [Citation.] And 'only a difference in wording is used in stating the same concept where the entity sought to be held liable is another corporation instead of an individual.'" (*Ibid*.)

"The essence of the alter ego doctrine is that justice be done. 'What the formula comes down to, once shorn of verbiage about control, instrumentality, agency, and corporate entity, is that liability is imposed to reach an equitable result.'" (*Mesler*, *supra*, 39 Cal.3d at p. 301.)

To prevail on a motion to amend under section 187, the judgment creditor must show, by a preponderance of the evidence, that: (1) there is such a unity of interest and ownership that the separate personalities of the defendant and purported alter ego no longer exist; (2) the party to be added as a judgment debtor had control of the underlying litigation and was virtually represented in that proceeding; and (3) an inequitable result will follow if the acts are treated as those of the defendant alone. (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 280.)

"'The decision to grant an amendment . . . lies in the sound discretion of the trial court. "The greatest liberality is to be encouraged in the allowance of such amendments in order to see that justice is done."'" (*Greenspan v. LADT LLC*, *supra*, 191 Cal.App.4th at p. 508.) We review the trial court's fact findings on alter ego for substantial evidence. (*Wells Fargo Bank, N.A. v. Weinberg*, *supra*, 227 Cal.App.4th at p. 8.)

17

B.  Substantial evidence supports the trial court's finding that the judgment debtor is the alter ego of Meditech

The deposition transcripts, Cobos's declaration, the lease between Meditech and the QK Ha Family Limited Partnership, and the UCC-1 filing provide ample evidence to support the trial court's alter ego finding.  There is overwhelming evidence that BSA and Meditech shared a unity of ownership and interest.  While Ha may not have technically "owned" Meditech, the evidence demonstrates that he had an interest in it.  After all, as Tran testified, Ha knew more about Meditech's business than she did.  Furthermore, it is evident that BSA, through Ha, controlled the underlying litigation.  He, not Tran, attended the arbitration proceeding.  In light of all the interdealings among Ha and Tran's corporate entities, it would be inequitable not to amend the judgment to add BSA as a judgment debtor.

## DISPOSITION

The judgment is affirmed.  LSCD is entitled to costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, Acting P. J.
ASHMANN-GERST

We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT

18