Filed 6/7/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ALICE LOPEZ,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JOSE ESCAMILLA,<br><br>    Defendant and Respondent. | 2d Civ. No. B316800<br>(Super. Ct. No. 56-2018-<br>00511082-CU-EN-VTA)<br>(Ventura County) |

The creditor of a corporation obtains a default judgment against the corporation for $157,370. The corporation has no funds or assets and has been suspended by the Department of Corporations. The creditor then sues the sole shareholder of the corporation for $157,370.

Does due process protect the sole shareholder from such an action? In some cases it does, but not here.

Alice Lopez appeals a summary judgment entered in favor of defendant Jose Escamilla in her lawsuit for damages against Escamilla based on his alter ego liability for a $157,370 judgment against a corporation. We conclude, among other things, that 1) the trial court erred by granting summary judgment in favor of the corporation; there are triable issues of fact concerning

Escamilla's alter ego liability; and (2) Lopez's civil action does not violate Escamilla's right to due process. We reverse.

FACTS

In May 2012, Lopez recovered a judgment for fraud, negligent misrepresentation, and breach of fiduciary duty against Magnolia Home Loans, Inc. in the amount of $157,370. (*Lopez v. Escamilla* (2020) 48 Cal.App.5th 763, 764.)

In 2018, Lopez filed a complaint for "alter ego liability" against Escamilla. She alleged that he was the alter ego of Magnolia Home Loans, Inc. She sought a judgment against him for $157,370 plus interest.

Escamilla moved for judgment on the pleadings. He contended that "a complaint in a separate action is not the proper procedure to obtain" a determination on alter ego liability. He claimed "adding an alter ego defendant is not a cause of action." (*Lopez v. Escamilla, supra*, 48 Cal.App.4th at p. 765.) The trial court granted that motion. On appeal, we reversed and held alter ego liability could be determined by Lopez's independent civil action. (*Id*. at pp. 765-766.)

Lopez moved for summary judgment. Escamilla argued that because the judgment against the corporation was by default, he did not have the opportunity to defend the action. Citing *Motores De Mexicali v. Superior Court* (1958) 51 Cal.2d 172 (*Motores*), he contended to hold him responsible for the corporation's liability denied him due process.

Lopez claimed that Magnolia Funding, Inc., the subject of a prior lawsuit that provided the original loan, and Magnolia Home Loans, Inc. "were the same company"; and that Escamilla was "the sole owner, officer, and director of each." "Magnolia Funding closed when Magnolia Home Loans got up and running.

2.

Magnolia Home Loans, Inc. then went out of business when it was sued." Escamilla received all its remaining cash assets of $53,000; that Escamilla's "mere $1,000 capital investment [in the corporation] cannot serve to shield him" from personal liability as its alter ego; and that the corporation Escamilla controlled defaulted, which is an admission of the allegations of her complaint.

The trial court granted summary judgment. It ruled that "it would violate Escamilla's due process rights to hold him liable for the prior judgment because he was not a party to that earlier case and no 'evidence-based' defense was asserted by the defendants in that case, plaintiff may not, as a matter of law, hold Escamilla liable for that judgment."

DISCUSSION

*Summary Judgment on Alter Ego Liability*

"Summary judgment provides courts with 'a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' " (*San Jose Neurospine v. Aetna Health of California, Inc.* (2020) 45 Cal.App.5th 953, 957.) On appeal, the reviewing court makes an independent assessment of the correctness of the trial court's ruling regarding summary judgment. (*Id.* at p. 958.) " 'Our task is to determine whether a triable issue of material fact exists.' " (*Ibid.*) " '[A]ny doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion.' " (*Ibid.*)

Under the alter ego doctrine, the corporate veil may be lifted to show the corporate form is a fiction and determine who controls the corporate entity and who is liable for its debts. "Whether the evidence has established that the corporate veil

3.

should be ignored is *primarily a question of fact . . . .*" (*Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1108 (*Toho-Towa Co.*), italics added.)

Courts look to the totality of circumstances to determine who actually owns or controls the corporate entity and who is using it as "a mere shell or conduit" for his or her own personal interests. (*Toho-Towa Co.*, *supra*, 217 Cal.App.4th at pp. 1108-1109.) Factors include "the commingling of funds and assets . . . , identical equitable ownership . . . , use of the same offices and employees, disregard of corporate formalities, identical directors and officers," etc. (*Id.* at p. 1108.) They also include who is treating "the assets of the corporation as his own." (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 512.)

*Triable Issues of Fact on Alter Ego Liability*

As we noted in our prior decision (*Lopez v. Escamilla*, *supra*, 48 Cal.App.5th at p. 765), Lopez's complaint alleged facts showing alter ego liability. "*Escamilla does not contest that the complaint states facts sufficient to support a finding that he is the alter ego of the corporation.*" (*Ibid.*, italics added.)

In response to requests for admissions, Escamilla admitted that he was Magnolia Home Loan, Inc.'s initial director, president, secretary, and treasurer. The company had only one board meeting. Only he signed the company's checks. He was the only shareholder, officer, and board member. The company is a suspended corporation and he still does business at the same location.

Lopez claimed that a company called Magnolia Funding, Inc. "procured the relevant loan." It was doing business as Magnolia Home Loans, Inc. In requests for admissions, Escamilla admitted that he incorporated Magnolia Funding, Inc.

4.

He was its initial director. He was the president, vice president, secretary, and treasurer. Only he signed the company's checks. He was the only shareholder, the only officer, and the only board member the company had. The evidence showed that both Magnolia Funding, Inc. and Magnolia Home Loans, Inc. were not "adequately capitalized." Each had only $1,000 in total capital reserves. This meager capitalization supports an inference these entities were created to avoid the personal liability of an alter ego. (*Automotriz etc. De California v. Resnik* (1957) 47 Cal.2d 792, 796-797; *Shafford v. Otto Sales Co.* (1957) 149 Cal.App.2d 428, 432.)

When Magnolia Funding, Inc. dissolved, Magnolia Home Loans, Inc. received its remaining physical assets. At the end of fiscal year 2009, Magnolia Home Loans, Inc. held cash in the amount of $53,102.92, and *all that money was paid to Escamilla.* This is a triable issue of fact concerning Escamilla's alter ego liability.

*Seeking Alter Ego Liability Post Judgment*

Plaintiffs often discover that a judgment against a corporation cannot be satisfied because the corporation has been looted, the corporate identity was a fiction, or alter egos who controlled the corporation possess all its assets. In such cases courts have long held that alter ego liability applies after the judgment has been entered against the corporation. (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1075; *Alexander v. Abbey of the Chimes* (1980) 104 Cal.App.3d 39, 44-46; *Thomson v. L.C. Roney & Co.* (1952) 112 Cal.App.2d 420, 425-426; *Mirabito v. San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54, 57.)

*Escamilla's Alleged Due Process Rights*

Escamilla relies on *Motores*, *supra*, 51 Cal.2d 172, for his contention that it violates due process to hold him liable as an alter ego.

In *Motores*, our Supreme Court held that when plaintiffs "*summarily* add" individuals to a previously entered default judgment against a corporation, those individuals are denied due process. (*Motores*, *supra*, 51 Cal.2d at p. 176, italics added.) This summary procedure denied defendants "the opportunity to be heard and to present [their] defenses." (*Ibid.*) The mere filing of a petition to add defendants to a judgment denies defendants the right to an "evidentiary hearing." (*Wells Fargo Bank, N.A. v. Weinberg* (2014) 227 Cal.App.4th 1, 9.)

Because the alleged alter egos could not fairly litigate their defenses in that summary procedure, *Motores*, *supra*, 51 Cal.2d 172, held there had to be a showing of their connection to that prior corporate litigation before they could be subject to such summary postjudgment alter ego liability.

Unlike the facts in *Motores*, Lopez did not move to summarily add Escamilla to the judgment. Also, unlike *Motores*, this case involves the beginning of a civil action, not a postjudgment summary proceeding. (*Lopez v. Escamilla*, *supra*, 48 Cal.App.5th at p. 765.) Escamilla will have the opportunity to answer the complaint, engage in discovery, and file pre-trial motions. Lopez must meet her burden of proof to support her theory of alter ego liability claims.

In distinguishing *Motores*, Lopez correctly notes that a "summary motion to amend a judgment unlike a separate lawsuit, may not provide an adequate forum" for a defendant to prove "lack of control" over corporate decisions. The summary

procedure to "amend a judgment to add a defendant" involves "imposing liability on the new defendant *without trial*." (*Triplett v. Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415, 1421, italics added.) That is not what happened here.

Lopez also notes that in *Motores* "there were three alter egos, such that no one of them individually controlled all corporate decisions." But here by contrast only one person made all the decisions–Escamilla, and, unlike *Motores*, only he controlled the litigation decisions of the corporation. Lopez made a sufficient showing in opposition to summary judgment to support a reasonable inference that Escamilla was "fully aware of the progress of the legal proceedings" because of his complete and exclusive control of the corporation. (*Motores*, *supra*, 51 Cal.2d at p. 175; *Toho-Towa Co.*, *supra*, 217 Cal.App.4th at p. 1110 [the alter ego has control of the defense of the action].)

We previously held that Lopez had the *right* to bring this postjudgment "independent action" against Escamilla on alter ego liability grounds. (*Lopez v. Escamilla*, *supra*, 48 Cal.App.5th at p. 764.) Here the trial court ruled on a motion for summary judgment, not a motion for judgment on the pleadings that was involved in our prior decision. But to the extent its ultimate conclusion is that Lopez is barred from bringing this postjudgment action, that ruling is inconsistent with our prior decision. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Escamilla reliance on *NEC Electronics Inc. v. Hurt* (1989) 208 Cal.App.3d 772 (*NEC Electronics*) is to no avail. Like *Motores*, that case was also a *summary* "motion to amend" the judgment previously entered against a corporation to add an officer as an additional judgment debtor. Moreover, there the

7.

court ruled there was "insufficient evidence to show that [the officer] controlled the defense of the litigation" that resulted in the judgment against the corporation. (*NEC Electronics*, at p. 781.)

In *NEC Electronics*, the court noted that the respective interests of the company and the individual subject to alter ego liability *were not the same*. "Because the interests of Ph [the company] and Hurt [the individual] *were different*, we cannot say that Hurt had occasion to conduct the litigation with a diligence corresponding to the risk of personal liability that was involved or that Hurt was virtually represented in the lawsuit." (*NEC Electronics*, *supra*, 208 Cal.App.3d at p. 781, italics added.)

Here, by contrast, Lopez claims the corporation and Escamilla had the *same* interests because Escamilla *was the corporation*. Because he was the corporation, *only he* controlled the company, all its decisions, the litigation, and the decision to default. (*Toho-Towa Co.*, *supra*, 217 Cal.App.4th at p. 1110.) " 'Who else was interested in the fate of the corporation? If not [the alter ego], who else?' " (*Ibid*.) " 'Manifestly, [the alter ego] had control of the defense of the action . . . .' " (*Ibid*.) Unlike *NEC Electronics*, here Lopez made a showing in opposition to summary judgment to support a reasonable inference that because of his exclusive control of the entity, Escamilla exclusively controlled the corporate litigation decisions.

Escamilla relies on *Wolf Metals Inc. v. Rand Pacific Sales Inc.* (2016) 4 Cal.App.5th 698 (*Wolf Metals*), another distinguishable case. There an alleged alter ego did not participate in the defense of an action against a corporation. A default judgment was entered against the corporation. The plaintiff thereafter filed a summary motion to amend the

judgment (Code Civ. Proc. § 187) to name the alter ego as an additional judgment debtor.  The court ruled the default judgment could not be amended post judgment.  It said the corporation "offered no defense" to the lawsuit, a default judgment was entered, and consequently the trial court erred by applying the summary motion procedure to amend the judgment to impose alter ego liability.  (*Wolf Metals*, at p. 709.)

Escamilla contends he did not know about the lawsuit against his company.  But the trial court did not reach that issue because it ruled, as a matter of law, "[t]he fact that Escamilla may have had actual or constructive notice of the action and *that he had the opportunity to control whether a defense was advanced or not* in the prior case are *irrelevant*."  (Italics added.)  In so ruling, the trial court erred.  Escamilla's control over that litigation is relevant.  (*Minton v. Cavaney* (1961) 56 Cal.2d 576, 581.)

The trial court also assumed a dispositive issue was the lack of a defense by the corporation in response to the lawsuit against it.  But the ultimate issue was not how the case was defended, but who in the corporation "controlled the litigation leading to the judgment" against the corporation.  (*Minton v. Cavaney, supra,* 56 Cal.2d 576, 581; *Toho-Towa Co., supra,* 217 Cal.App.4th at p. 1110; *Alexander v. Abbey of the Chimes, supra,* 104 Cal.App.3d at p. 45 ["[I]t is now settled that '. . . the authority of the court will be exercised to impose liability under a judgment upon the *alter ego* who has had control of the litigation' "].)  The one who controls the litigation decisions may decide to defend a lawsuit or make an " 'intentional strategic' " decision to default. (*Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058, 1073.)

9.

The sole alter ego who owns the company and makes all corporate decisions may decide that, instead of providing a defense to a meritorious lawsuit, the corporation should incur a default judgment to insulate himself from liability and to save himself from spending money on a frivolous defense. By doing so, he "controlled the litigation leading to the judgment" against the corporation and he is liable as an alter ego. (*Minton v. Cavaney*, *supra*, 56 Cal.2d at p. 581.) At this stage we do not decide whether Escamilla directed a tactical default, only whether there are triable issues of fact.

Lopez made a showing to support reasonable inferences that the above scenario occurred. Escamilla exclusively owned and controlled the corporation and made all its decisions, including its litigation decisions. His claim of lack of knowledge is disputed and may be challenged on credibility grounds. "Surely every chief executive officer of a corporation is cognizant of claims asserted against the corporation." (*NEC Electronics*, *supra*, 208 Cal.App.3d at p. 781.)

Lopez claimed, despite Escamilla's denial, there are facts showing the decision to allow a default judgment against the corporation was strategic. It placed liability for fraud on the shell company, instead of Escamilla, and that was exclusively for his benefit. There was no defense to Lopez's lawsuit for fraud. The company was an under-capitalized shell. It was not a legitimate independent business; it was a suspended corporation and it went out of business *when Lopez filed suit*. Escamilla took *all the cash* from that business thereby making it judgment proof. The default of the corporation paved the path for the judgment, blocking Lopez's path to satisfy the judgment. This could show

10.

Escamilla's pervasive control over both the entry of judgment and the ability to prevent its enforcement.

Lopez also claims that there is additional evidence that Escamilla deliberately calculated all his actions to defeat her rights because in response to a request for admissions he *admitted* that he is still is doing "*business at the same location* as Magnolia Home Loans, Inc. did business." (Italics added.) (*Wells Fargo Bank, N.A. v. Weinberg, supra*, 227 Cal.App.4th at p. 9.) Lopez claimed the facts she presented showed the "failure to impose alter ego liability sanctions a fraud and promotes injustice." (Capitalization and underscoring omitted.) Proof of these facts at trial may lead to alter ego liability. (*Alexander v. Abbey of the Chimes, supra*, 104 Cal.App.3d at p. 45.)

DISPOSITION

The judgment and order granting summary judgment are reversed. Costs on appeal are awarded to appellant.

CERTIFIED FOR PUBLICATION.

GILBERT, P. J.

We concur:

YEGAN, J.

TANGEMAN, J.

11.

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Law Offices of Malcolm R. Tator and Malcolm Tator for Plaintiff and Appellant.

Richard W. Tentler for Defendant and Respondent.